Frank W. McINTYRE, Appellant,

v.

Charles M. WILSON III, John Sjovall, Cleve Clinton, John Palter, Craig Fowler, Steve L. Sliman, SLS Consulting, Inc., and Geary & Spencer, P.C., Appellees.

No. 05–99–00094–CV.

Court of Appeals of Texas, Dallas.

June 22, 2001.

Robert "Bob" Gammage, Charles E. Hampton, Austin, for Appellant.

Thomas J. Obrien, James L. Sowder, Wade Caven Crosenoe, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, Shawn Malcolm McCaskill, Cowles & Thompson, Christopher William Holmes, John H. Cochran, Cochran & Cochran, P.C., Dallas, for Appellee.

Before Justices WHITTINGTON, JAMES, and ROACH.

## OPINION

Opinion By Justice ROACH.

This appeal involves the third lawsuit filed by appellant Frank W. McIntyre over the dissolution of his business partnership with appellee Steve L. Sliman. McIntyre sued appellees Charles W. Wilson III, John Slovall, Cleve Clinton, John Palter, Geary & Spencer, Craig Fowler, Sliman, and Sliman's business SLS Consulting, Inc., alleging various causes of action. In a series of interlocutory orders (ultimately made final), the trial court rendered judgment in favor of all appellees and against McIntyre. The trial court also imposed monetary sanctions against McIntyre and limited his ability to file new litigation against Geary & Spencer.

In eight issues on appeal, McIntyre challenges the trial court's judgment on the merits of his lawsuit as well as the orders sanctioning him and finding him to be a "vexatious litigant." For the reasons set forth below, we vacate the sanctions against McIntyre for filing a groundless lawsuit against Wilson and Fowler. We affirm the trial court's judgment in all other respects, including the sanctions awarded to appellees Clinton, Palter, and Geary & Spencer.

### BACKGROUND

In 1985, McIntyre and Sliman became partners in Nova Information Systems,

which sold and serviced users of the "trademark" product, "Open Systems Accounting Systems." Eight months later, Sliman withdrew from the partnership and started his own business, SLS Consulting, Inc., with partnership assets. McIntyre sued Sliman for breach of fiduciary duty, breach of contract, and wrongful termination of the partnership and sought damages and an accounting of partnership assets.[1] During the pendency of the lawsuit, McIntyre and Sliman agreed to submit the dispute to binding arbitration, and, after a five-day hearing, the arbitrator awarded McIntyre $40,235. The award was entered as a final judgment in the 162nd Judicial District Court in September 1990. No appeal was taken.

Thereafter, McIntyre sued his lawyers, Clinton, Palter, and Geary & Spencer, for legal malpractice in the partnership dissolution lawsuit, complaining that as a result of their acts and omissions, he did not get his fair share of partnership income.[2] In this second lawsuit, he alleged causes of actions for negligence, gross negligence, negligent misrepresentation, breach of fiduciary duty, deceptive trade practices, and fraud. Again, he sought damages and an accounting. A jury ultimately found in favor of Clinton, Palter, and Geary & Spencer on McIntyre's claims, and the trial court entered judgment on the jury's findings. McIntyre unsuccessfully appealed the judgment to this Court and the Texas Supreme Court.[3]

While the appeal was pending in the Texas Supreme Court, McIntyre filed the current lawsuit and named as parties all of the defendants in the two previous lawsuits as well as appellees Wilson and Fowler, who testified favorably for the defense in the malpractice lawsuit. His petition asserted many of the causes of actions alleged in the previous lawsuits. In addition, he alleged all the appellees, except Sliman, made false representations of law and fact to the jury while testifying as experts in the malpractice suit. Further, he asserted a cause of action against Sliman for spoliation of evidence, alleging Sliman intentionally destroyed business records reflecting the amount of money Sliman received from clients prior to the partnership termination. Finally, he sought to overturn the 1990 and 1996 judgments by bill of review and requested the court appoint an auditor to determine what Sliman owed him.

Each of the appellees moved for either summary judgment or dismissal of McIntyre's claims on various grounds. The trial court granted each motion, which ultimately resulted in a final take-nothing judgment against McIntyre. Moreover, in separate orders, the trial court found McIntyre's suit against Clinton, Palter, Geary & Spencer, Wilson, and Fowler was groundless and brought in bad faith and for purposes of harassment. The trial court ordered McIntyre to pay a sanction of $23,990 to Clinton, Palter, and Geary & Spencer, and a sanction of $6,000 to Wilson and Fowler. Finally, the trial court found McIntyre was a "vexatious litigant" and signed an order prohibiting him from filing any new litigation in Texas state or federal courts against Geary & Spencer without

---

1. Appellee Fowler initially represented McIntyre in the wrongful dissolution lawsuit, but he was later replaced by Clinton and Palter of the law firm Geary & Spencer.

2. He also sued Sliman's attorney, John Sjovall of Cowles & Thompson.

3. This Court dismissed McIntyre's appeal after he failed to file a brief that complied with the rules of appellate procedure. McIntyre then appealed to the Texas Supreme Court, which determined McIntyre appealed the case "for delay and without sufficient cause" and sanctioned him $1000.

first obtaining the permission of the local administrative judge of the court where McIntyre intends to file the litigation.

In eight issues on appeal, McIntyre challenges the trial court's judgment on the merits of his lawsuit as well as the sanctions order and "vexatious litigant" order. Among the many issues we consider are whether (1) Texas law provides absolute immunity for a testifying expert, (2) McIntyre can maintain a spoliation cause of action against Sliman, and (3) McIntyre's failure to appeal the 1990 judgment and his unsuccessful appeal of the 1996 judgment preclude bill of review relief. In addition to these issues, McIntyre complains the "vexatious litigant" statute is unconstitutional and argues the sanction should be set aside because his lawsuit was not "groundless." We will address each of McIntyre's complaints, beginning with the trial court's ruling on the merits of his lawsuit.

## STANDARD OF REVIEW

■ This Court reviews a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Foreness v. Hexamer*, 971 S.W.2d 525, 527 (Tex.App.—Dallas 1997, pet. denied). When reviewing a traditional summary judgment, we apply well-known standards. *See* TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.—Dallas 1998, no pet.). The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

## BILLS OF REVIEW

In his sixth, seventh, and eighth issues, McIntyre complains the trial court erred in granting summary judgment in favor of Sliman, Clinton, Palter, and Geary & Spencer on his petitions for bill of review. In particular, he complains the judgments in those cases are "inconsistent" and neither res judicata nor collateral estoppel should bar this lawsuit. We disagree.

■ A bill of review is an independent action to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999). Bill of review relief is available only if a party has exercised due diligence in pursuing all available legal remedies against a former judgment. *Id.*, 11 S.W.3d at 927. If legal remedies were available but ignored, relief by equitable bill of review is not available. *Id.* Thus, a litigant who permits the judgment to become final by failing to invoke the right to appeal is not entitled to bill of review relief. *See French v. Brown*, 424 S.W.2d 893, 895 (Tex.1967). Likewise, a bill of review may not be used as an additional remedy by a litigant who has made a timely but unsuccessful appeal. *Rizk v. Mayad*, 603 S.W.2d 773, 776 (Tex.1980).

■ With respect to McIntyre's bill of review attack on the 1990 judgment in the partnership dissolution lawsuit, Sliman moved for summary judgment on the ground that McIntyre (1) did not appeal the judgment and (2) has not alleged extrinsic fraud. Further, he argued the relief is barred by the four-year statute of limitations. The summary judgment evidence establishes that McIntyre, although aware of the judgment, failed to appeal it. Consequently, he is not entitled to bill of review relief. *See id.*, 603 S.W.2d at 776.

■ Furthermore, his petition for bill of review complains that Sliman concealed business records regarding partnership income. Because of his allegations, only extrinsic fraud will entitle McIntyre to bill of review relief. *See Vickery v. Vickery*, 999 S.W.2d 342, 367 (Tex.1999). Extrinsic fraud denies a losing litigant the opportunity to fully litigate his rights upon trial. *Id.* It requires proof of some deception practiced by the adverse party, collateral to the underlying action. *Id.* Intrinsic fraud is inherent in the matter considered and determined in the trial, where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were or could have been litigated therein. *Id.* Intrinsic fraud includes false testimony, fraudulent instruments, and any matter actually presented to and considered by the court in rendering the judgment assailed. *Id.*

Here, McIntyre complains that Sliman concealed business records and provided false tax returns that misreported his income. These allegations are not collateral to the matter, but were the very essence of his lawsuit which sought his share of partnership profits. Consequently, we conclude McIntyre has alleged intrinsic fraud, which does not entitle him to bill of review relief. Accordingly, we conclude the trial court did not err in granting Sliman summary judgment on McIntyre's request for a bill of review of the 1990 judgment.

■ With respect to the 1996 judgment, Clinton, Palter, and Geary & Spencer moved for summary judgment on the grounds that (1) bill of review relief was not available to McIntyre because he timely appealed the judgment at issue and (2) the false testimony alleged by McIntyre constituted intrinsic fraud. Again, we agree with both grounds.

The summary judgment evidence shows that McIntyre appealed the 1996 judg-

ment; thus, bill of review relief is not available. *See Rizk,* 603 S.W.2d at 776. Nevertheless, McIntyre argues the holding in *Rizk* should not apply to him, because this Court determined his appeal of the 1996 judgment on procedural grounds, rather than on the merits. We reject McIntyre's invitation to ignore well-established law precluding bill of review relief to a litigant who has timely appealed the judgment and to limit it "only to appeals which were decided on the merits, rather than on procedural grounds." The record shows that McIntyre's appeal of the 1996 judgment was dismissed by this Court because McIntyre failed to file a brief that complied with the Texas Rules of Appellate Procedure, although given many opportunities. Thus, even if we were inclined to limit the law as McIntyre proposes, and we are not, we certainly would not do so in a case in which the party was at fault for failing to receive a meritorious review.

Furthermore, McIntyre's petition for bill of review is based on his assertion that Clinton and Palter gave false testimony at trial. This complaint involves alleged intrinsic fraud and therefore does not entitle him to bill of review relief. *See Vickery,* 999 S.W.2d at 367.

■ Having concluded the trial court did not err in granting summary judgment denying McIntyre bill of review relief, we likewise conclude the doctrine of res judicata bars McIntyre's causes of actions for breach of fiduciary duty, negligence, and deceptive trade practices against Clinton, Palter, and Geary & Spencer as well as his requests for an accounting, appointment of a receiver and imposition of a constructive trust, and claims against Sliman for fraudulent transfer, fraud and malice, and breach of fiduciary duty. All these claims either were brought or could have been brought in the original lawsuits, and McIn-

tyre does not argue otherwise. In fact, he acknowledges in his brief that these claims survive only if the prior judgments were set aside by bills of review. Accordingly, we conclude the trial court did not err in granting summary judgment to the various appellees on these claims.

In so concluding, we reject McIntyre's argument that the 1990 and 1996 judgments are "inconsistent" and "should not both be allowed to stand." [4] We have reviewed the judgments and conclude there is nothing on the face of the judgments to suggest they are inconsistent: one judgment awards McIntyre monetary damages in the partnership dissolution and the other denies his claims for malpractice against the attorneys who successfully represented him in the first lawsuit.

We conclude issues six, seven, and eight are without merit.

### WITNESS IMMUNITY

■ In his first issue, McIntyre complains the trial court erred in granting judgment for appellees Fowler, Wilson, Sjovall, Clinton, and Palter on his claims that they gave false testimony in the 1996 legal malpractice trial. Specifically, he al-leges these appellees testified as "legal experts" and, either negligently or in bad faith, falsely testified that he was precluded from sharing in post-dissolution partnership profits. All appellees sought judgment on the basis that they were entitled to absolute immunity from suit for their testimony.[5] Clinton and Palter also moved on the ground that, as adverse parties and adverse witnesses in the legal proceeding, they owed no duty to McIntyre.

■ We begin with the summary judgment in favor of Clinton and Palter. The trial judge did not specify a basis for his ruling on the motion for summary judgment; thus, on appeal McIntrye is required to show that each of the independent grounds asserted in support of summary judgment was insufficient to support the judge's ruling. *See Williams v. Crum & Forster Commercial Ins.*, 915 S.W.2d 39, 43 (Tex.App.—Dallas 1995), *rev'd on other grounds*, 955 S.W.2d 267 (Tex.1997). In this case, McIntyre appears to presume the trial court granted these appellees summary judgment on the basis of an absolute privilege. He offers no discussion on the "no duty" ground other than

---

4. Specifically, McIntyre argues:

Sliman argued that McIntyre's attorneys were negligent in the 1987 suit in not pursuing discovery of his post-dissolution accounting records, that the attorney's negligence was imputed to McIntyre, and constituted fault defeating the "unmixed with fault" element for bill of review relief. [Citation omitted.] McIntyre initiated the 1994 malpractice suit against Clinton, Palter and G & S primarily on the theory that the attorneys were negligent in failing to pursue the records. In that case, the jury found that neither the attorneys nor McIntyre was negligent. [Record citation omitted.] This no-negligence finding contradicts Sliman's position that the attorneys or McIntyre or all three were negligent.

\* \* \*

Either McIntyre's attorneys were negligent in the suit giving rise to the 1990 judgment, or the 1996 judgment is inconsistent and wrong.

Under this theory, anytime a plaintiff loses his underlying suit, sues his attorneys for malpractice and then loses that suit, he could argue inconsistent judgments to avoid well-established law on bill of review. We reject such a proposition.

5. Clinton, Palter, and Sjovall filed a motion for summary judgment urging absolute immunity; Fowler and Wilson raised the issue in a motion to dismiss.

to make passing reference to it within his argument on issues six, seven, and eight. Specifically, he states:

> To Clinton, Palter and G & S's argument that they owed no duty to McIntyre to testify correctly because they were adverse, [McIntyre] responded that ethical duties should provide a basis for a negligence claim, even as to one's adversary. While this may not necessarily be the law now, it is within the purview of arguing for reversal or modification of existing law. It is a foreseeable, logical extension of existing law to contemplate that attorneys may be liable to adversaries or third parties for an ethical violation that causes harm to another. Barbara Glessner Fives, *Post–Conference Reflections: Speculating on the Future of Attorney Responsibility to Nonclients*, 37 S. TEX. L.REV. 1283, 1300 ff. (1996). McIntyre urges this Court to adopt such a duty.[6]

Texas Rule of Appellate Procedure 38 provides that a brief to this Court shall contain, among other things, a concise, nonargumentative statement of the facts of the case, supported by record references, and a clear and concise argument for the contention made with appropriate citations to authorities and the record. TEX.R.APP. P. 38.1. Here, McIntyre does nothing more than suggest that "ethical duties" provide a basis for his claims premised on false testimony. He offers no legal analysis and cites only generally to a law review article. Under these circumstances, we conclude he has failed to adequately brief this ground. Because the trial court could have granted summary judgment on these claims on the basis that Clinton and Palter, as adversaries at trial, owed no duty to

McIntyre, and because McIntyre has failed to adequately brief this ground, we conclude the summary judgment on these claims must stand. *See Williams*, 915 S.W.2d at 43.

▮▮▮▮▮ Moreover, we conclude absolute immunity, which was raised by all appellees, bars McIntyre's claims. At common law, the absolute immunity of parties and witnesses from subsequent liability for their testimony in judicial proceedings is well established. *Briscoe v. LaHue*, 460 U.S. 325, 331–32, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Crain v. Unauthorized Practice of Law Comm.*, 11 S.W.3d 328, 335 (Tex.App.—Houston [1st Dist.] 1999, pet. denied), *cert. denied*, —— U.S. ——, 121 S.Ct. 2218, 150 L.Ed.2d 211, (U.S. 2001). Any communication, even perjured testimony, made in the course of a judicial proceeding, cannot serve as a basis for a suit in tort. *Crain*, 11 S.W.3d at 335. The administration of justice requires "full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits." *Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex.1994).

On appeal, McIntyre argues absolute immunity for testifying witnesses is limited to defamation cases and interprets the supreme court's opinion in *Bird* to support his position. Alternatively, he argues that, if the immunity applies in all cases, this Court should carve out an exception excluding expert witnesses. First, we disagree with McIntyre's interpretation of *Bird*. Second, we decline to carve out an exception in this case.

In *Bird*, a psychologist executed an affidavit concluding that a boy had been sexually abused by his father. The boy's mother filed the affidavit in family court in an

---

**6.** This paragraph came at the end of McIntrye's discussion of the trial court's ruling on his petition for bill of review in issues six,

seven, and eight, which he argued together in his brief. For convenience and clarity, we address this paragraph within the first issue.

effort to modify child custody and visitation, and criminal charges were filed against the father. Ultimately, the father regained custody of his son, and the criminal charges against him were dismissed. The father then sued the psychologist for negligent misdiagnosis. The court concluded the affidavit was privileged and noted that, although the plaintiff's claims were couched in terms of negligent misdiagnosis, the essence of the claim was that the psychologist's *communication* of her diagnosis caused him damages. *Id.* at 771–72.

Here, the essence of McIntyre's complaint is the *communication* of the witnesses' opinions on whether McIntyre was entitled to post-dissolution partnership profits. *Bird* specifically provides, without limitation, that "[c]ommunications made during the course of judicial proceedings are privileged." *Id.* at 771. The fact that the case involved defamation-type damages does not so restrict this statement of law; rather, we conclude any analysis was simply made in the context of the specific proceeding. *See Griffin v. Rowden,* 702 S.W.2d 692, 694–95 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (holding that language in previous cases recognizing an absolute privilege "in a civil action for libel or slander" was descriptive only of the case before the court—a libel suit—and was not intended to limit the privilege to libel or slander only; applying the privilege in an action for tortious interference.); *Crain,* 11 S.W.3d at 335 (applying privilege to claim involving tortious interference).

With respect to his invitation to carve out an exception for expert witnesses, we decline. The policy behind the absolute privilege is to encourage unrestrained access to the courts and full development of the facts in court. It is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual. *See Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 113, 166 S.W.2d 909, 913 (1942). This policy would not be furthered by carving out an exception for expert witnesses. To the contrary, the intimidating threat of a lawsuit would, in fact, hamper the very purpose for which the privilege was created.

Moreover, in the context of the suit before us, McIntyre had a multitude of remedies available to him during the trial of the malpractice case, including challenging the expert testimony at trial, calling his own expert to testify on the subject, or seeking review at the appellate level. Under these circumstances, we decline to exclude expert witnesses from the protection of an absolute privilege for their testimony during judicial proceedings.

Because appellees were entitled to an absolute privilege for their testimony during the malpractice lawsuit, we conclude the trial court did not err in granting summary judgment or dismissing McIntyre's claims based on that testimony. Accordingly, we conclude his first issue is without merit.

### Amended Pleading

In his fourth issue, McIntyre claims the trial court erred in granting summary judgment in favor of Clinton, Palter, and Geary & Spencer because their motion failed to address a negligent misrepresentation cause of action pleaded in McIntyre's fifth amended petition.

The fifth amended petition was filed the day before the hearing on Clinton, Palter, and Geary & Spencer's summary judgment motion and was not served on the appellees until the day of the hearing. Appellees orally moved to strike the pleading as untimely, which led to the following discussion:

[MCINTYRE]: Untimely under what time limit?

[TRIAL COURT]: This a trial for many purposes. And I think included within that you would be obligated to file an amended pleading seven days prior.

[MCINTYRE]: The trial is set in January.

[TRIAL COURT]: Well I think it is encumbant [sic] upon you to file the amendment seven days before today's hearing. So let's go forward.

That same day, the trial court signed an order granting summary judgment in favor of Clinton, Palter, and Geary & Spencer. The order did not mention the amended pleading. At a hearing six weeks later, appellees asked the trial judge to sign an order striking the fifth amended petition, but the judge apparently could not recall what occurred at the summary judgment hearing and opted to rely on what the record reflected.[7] McIntyre argues on appeal the trial judge never ruled on the motion to strike because he subsequently declined to sign a ruling to that effect at the later hearing. He argues we must therefore presume leave was granted. Because the summary judgment order did not address the negligent misrepresentation cause of action, he argues (1) the trial judge erred in ordering that McIntyre "take nothing" against appellees or (2) the order is interlocutory and unappealable. We disagree.

■■■■ Texas Rule of Civil Procedure 63 provides that amended pleadings may be filed within seven days of trial only with leave of court. TEX.R. CIV. P. 63. A summary judgment proceeding is a trial within the meaning of rule 63. *Goswami v. Metro. Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988). Based on the supreme court's holding in *Goswami,* we presume the trial court granted leave, even when the filer failed to request leave, when (1) the record fails to show that the trial court did not consider the amended pleading and (2) there is not a sufficient showing of surprise or prejudice on the part of the opposing party. *Id; see Wilson v. Korthauer,* 21 S.W.3d 573, 578 (Tex.App.— Houston [14th Dist.] 2000, pet. denied). In determining whether the first prong of the *Goswami* presumption is satisfied, we consider whether the amended petition was part of the record before the trial court and whether the judgment states the trial court considered all the pleadings on file. *See Goswami,* 751 S.W.2d at 490; *Wilson,* 21 S.W.3d at 578. If both questions are answered in the affirmative, the first prong of the test is met. *Wilson,* 21 S.W.3d at 578.

■■■■ Here, the fifth amended pleading was filed with the trial court and is a part of the record. However, unlike the judgment in *Goswami,* the order in this case does not recite that the trial court considered all the pleadings on file and the record clearly reveals the trial court considered the fifth amended petition filing to be untimely. Accordingly, we conclude the first prong of the *Goswami* test fails and the presumption does not apply. Because McIntyre did not obtain leave of court, the fifth amended petition was not properly before the court with respect to Clinton, Palter, and Geary & Spencer.

■■■■ Regardless, even if we presumed that McIntyre filed his fifth amended petition with leave of court, we would not be required to remand for further proceedings. Although summary judgment generally may not be granted on a claim not

---

7. Specifically, when asked to sign such an order, the trial judge responded, "Well, we had a record of that, so why don't we just leave it as it is."

addressed in the summary judgment proceeding, it may be granted on later pleaded causes of action if the grounds asserted in the motion show that the plaintiff could not recover from the defendant on the later pleaded causes of action. *See id.* at 579; *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 435–36 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Smith v. Heard,* 980 S.W.2d 693, 697 (Tex.App.—San Antonio 1998, pet. denied) (acknowledging that courts have granted summary judgment on causes of actions not addressed in motion if movant has conclusively disproven ultimate fact central to all causes of action alleged or if unaddressed claims are derivative of addressed claims); *Judwin Prop. Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 502–03 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Cissne v. Robertson,* 782 S.W.2d 912, 918 (Tex. App.—Dallas 1989, writ denied) (affirming summary judgment on three causes of actions not addressed in motion).

■ Here, appellees' motion "sought summary judgment on McIntyre's claims" on the ground that an absolute privilege applies to all statements made in the course of a judicial proceeding. McIntyre's claim for negligent misrepresentation was based on Clinton's and Palter's testimony during the legal malpractice trial; thus, we conclude appellees' ground was sufficient to encompass the negligent misrepresentation claim. We have previously concluded appellees were entitled to an absolute privilege for their testimony in the legal malpractice lawsuit; accordingly, summary judgment on the negligent misrepresentation claim was not error. We conclude the fourth issue is without merit.

### SPOLIATION OF EVIDENCE

■ In his second issue, McIntyre complains the trial court erred in granting summary judgment in Sliman's favor on his claim for spoliation of evidence. McIntyre sued Sliman for "intentionally destroying or otherwise failing to preserve business records reflecting the amount of money Sliman received from clients prior to the termination of the business partnership." Sliman moved for summary judgment on the ground that no cause of action exists in Texas for spoliation of evidence. We agree with Sliman—Texas does not recognize a cause of action for spoliation of evidence.

Nevertheless, on appeal, McIntyre argues that while the Texas Supreme Court has refused to recognize a cause of action for spoliation by parties to a lawsuit, it has left open the question of whether it would recognize a spoliation tort against third parties. *See Trevino v. Ortega,* 969 S.W.2d 950, 951 n. 1 (Tex.1998) ("Whether we recognize a cause of action for spoliation by persons who are not parties to the underlying lawsuit is not before the Court, and therefore we do not consider it.")

Initially, we question whether McIntyre's pleadings truly give rise to an allegation of spoliation of evidence by a third party. Sliman was the defendant in the original lawsuit that McIntyre filed to obtain partnership profits. In his pleadings in this case, McIntyre asserted that Sliman was notified that the records were "material evidence" in the partnership accounting suit and Sliman therefore had a duty to preserve the records. Thus, it is clear McIntyre recognized early on the importance of the documents he now claims are destroyed. Equally clear is the fact McIntyre had adequate means at that time to obtain them before they were destroyed. Irrespective of the reasons, the fact remains he did not.

Regardless, McIntyre dedicated only five sentences in his brief to urging creation of the new tort on the sole basis that "[t]raditional procedural remedies are in-

adequate to deter third-party spoliators." He makes no argument and offers no analysis as to the threshold question that would face this Court in creating a new tort cause of action: duty. McIntyre makes no attempt to define what could be a limitless duty on all citizens of Texas nor does he attempt to address the circumstances under which such a duty would arise.

As aptly stated by the Texas Supreme Court in declining to recognize a cause of action for spoliation of evidence by parties:

> This Court treads cautiously when deciding whether to recognize a new tort. [Citations omitted.] While the law must adjust to meet society's changing needs, we must balance that adjustment against boundless claims in an already crowded judicial system. We are especially averse to creating a tort that would only lead to duplicative litigation, encouraging inefficient litigation of issues better handled within the context of the core cause of action.

*Trevino,* 969 S.W.2d at 952.

Under the particular circumstances presented in this case, we conclude McIntyre has *not provided any compelling reason* for this Court to recognize a new tort of spoliation by third parties. Accordingly, we resolve the second issue against McIntyre.

### SANCTIONS

Two groups of appellees—(1) Clinton, Palter, and Geary & Spencer and (2) Wilson and Fowler—sought sanctions against McIntyre for filing a groundless lawsuit under Texas Rule of Civil Procedure 13 and chapter nine of the Texas Civil Practice and Remedies Code.[8] The trial court

held a joint hearing on the motions and, thereafter, in two separate orders, imposed sanctions against McIntyre in the amounts of $23,900 and $6,000, which represented attorneys fees incurred by (1) Clinton, Palter, and Geary & Spencer and (2) Wilson and Fowler, respectively. In both orders, the trial court found that McIntyre's lawsuit against these appellees was groundless and brought in bad faith and for the purposes of harassment. In his third issue, McIntyre argues his lawsuit was not groundless and we must therefore reverse the trial court's sanctions orders against him. For reasons set forth below, we vacate the sanction order favoring Wilson and Fowler; we affirm the sanctions order favoring Clinton, Palter, and Geary & Spencer.

■ Under both rule 13 and chapter 9, a trial court may sanction a party for signing a pleading that violates their provisions. Under both rule 13 and chapter 9, the signing of a pleading by an attorney or party constitutes a certificate by them that they read the pleading and that, to the best of their knowledge, information, and belief, formed after reasonable inquiry, the pleading is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. TEX.R. CIV. P. 13; TEX. CIV. PRAC. & REM.CODE ANN. § 9.011 (Vernon Supp.2001). "Groundless" means no basis in law or fact and not warranted by a good faith argument for the extention, modification, or reversal of existing law. *See* TEX.R. CIV. P. 13; TEX. CIV. PRAC. & REM.CODE ANN. § 9.001(3) (Vernon Supp.2001).

■ Imposing an available sanction is left to the sound discretion of the trial court. *See Koslow's v. Mackie,* 796 S.W.2d

---

**8.** Actually, Wilson and Fowler sought sanctions solely under rule 13; in addition to rule 13, Clinton, Palter, and Geary & Spencer also relied on chapter nine of the Texas Civil Practices and Remedies Code.

700, 704 (Tex.1990). An appellate court will set aside the decision only on a showing of a clear abuse of discretion. *Id.* The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or equivalently, whether under all the circumstances of the particular case, the trial court's action was arbitrary or unreasonable. *Id.*

■ We begin with the motion for sanctions filed by Wilson and Fowler. The causes of action against Wilson and Fowler dealt solely with their testimony in the malpractice lawsuit. In their motion for sanctions, Wilson and Fowler argued that had McIntyre researched the law, he would have learned they were entitled to an absolute privilege for their testimony. They asserted that McIntyre's "attempt to use this litigation as a vehicle to harass [them] was unconscionable."

In his order, the trial judge found, among other things, that McIntyre's claims against Wilson and Fowler had no basis in law or in fact and McIntyre made no good faith argument for extension, modification, or reversal of existing law. We have reviewed the arguments presented and conclude that, contrary to the trial court's finding, McIntyre did in fact make a good faith argument for extension, modification, or reversal of existing law. In particular, we agree with the reasoning advanced by the First District Court of Appeals in its opinion in *Laub v. Pesikoff,* 979 S.W.2d 686, 693 (Tex.App.—Houston [1st Dist.] 1998, pet. denied), in reversing a sanctions award in a similar circumstance. While we ultimately do not agree with McIntyre's position with respect to the absolute privilege, he has argued several cases to support his interpretation of the law. As stated in *Laub,* we cannot allow rule 13 to have a chilling effect on those who seek to change legal precedent. Accordingly, we conclude the trial court

abused its discretion in awarding rule 13 sanctions to Wilson and Fowler.

■ We reach a different result with respect to Clinton, Palter, and Geary & Spencer. Unlike Wilson and Fowler, McIntyre's claims against Clinton, Palter, and Geary & Spencer involved more than trial testimony. Specifically, McIntyre sought bill of review relief to set aside the 1996 malpractice judgment and reasserted many of the causes of action brought in that suit. In their sanctions motion, these appellees asserted that "even the most elementary research" by McIntyre would have revealed that (1) an absolute privilege applied to their testimony at the legal malpractice trial and they owed no legal duty to him at the trial and (2) bill of review relief was not available to him because he appealed the judgment and alleged only intrinsic fraud.

At the sanctions hearing, these appellees offered four exhibits as evidence: (1) the statement of facts on a hearing on McIntyre's motion to recuse the trial judge; (2) McIntyre's petition for bill of review and his pleadings in the malpractice lawsuit; (3) McIntyre's last brief filed with this Court in his appeal of the malpractice lawsuit; and (4) Palter, Clinton, and Geary & Spencer's answers to McIntyre's 377 requests for admissions. In his order granting the motion and awarding sanctions, the trial judge found, among other things, that "each of the plaintiff's claims have no basis in law or fact and make no good faith argument for the extension, modification, or reversal of existing law[.]"

In his brief, McIntyre does not challenge the character of the sanction; rather, his sole complaint is that the sanction should not have been imposed at all. In doing so, he argues the trial court abused its discretion for the sole reason that McIntyre made a good faith argument regarding one of appellees' defenses to a

portion of the claims; specifically, he argues he made a good faith argument on appellees' assertion of an absolute privilege to his claims involving alleged false testimony.

While McIntyre is correct on this point, his argument wholly fails to address any of the other bases that could support the sanction. In particular, McIntyre ignores the fact that the trial court's sanction could be based on the groundlessness of his request for bill of review relief. Specifically, McIntyre sought a bill of review to set aside the 1996 malpractice judgment, despite well-established law that his appeal of that judgment precluded such relief. The trial judge had before him McIntyre's amended petition in the malpractice lawsuit, his petition in this lawsuit, and evidence that he appealed the malpractice judgment. In seeking to reverse the sanction, McIntyre makes no attempt to argue that this claim, as well as the various causes of action previously pleaded, had any basis in law or fact, nor does he advance any argument, good faith or otherwise, for the extension, modification, or reversal of existing law. Under these circumstances, we cannot conclude the trial court abused its discretion in finding McIntyre filed a groundless lawsuit against Clinton, Palter, and Geary & Spencer. We need not address the trial court's findings regarding bad faith or intent to harass, because McIntyre has not challenged those findings. In conclusion, we vacate the sanctions imposed in favor of Wilson and Fowler; we affirm the sanctions in favor of Clinton, Palter, and Geary & Spencer.[9]

## VEXATIOUS LITIGANT

In his fifth issue, McIntyre claims the "vexatious litigant" statute is unconstitutional because it is "overbroad, interferes with Texas constitutional provisions for open courts and jury trials, and conflicts with the Supremacy Clause of the United States Constitution by purporting to limit by state order the right to file [a lawsuit] in federal court." Within this point, he does not complain about the finding itself.

■ To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by timely request, objection, or motion. *See* TEX.R.APP. P. 33.1. As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993). Here, McIntyre did not raise his constitutional complaint in the trial court. Accordingly, we do not address this issue on appeal. Because he has not brought a complaint regarding the "vexatious litigation" finding itself, we likewise do not address the propriety of that finding and resolve the fifth issue against McIntyre.

In conclusion, we vacate the sanctions imposed against McIntyre for filing a groundless lawsuit against Wilson and

---

9. We note that, in his prayer for relief, McIntyre also asks that we reverse the rule 13 sanctions order in favor of Sliman and SLS Consulting. In his brief on the sanctions issue, McIntyre failed to cite this Court to any specific sanctions order as to *any* appellee. Nevertheless, this Court was able to locate two sanctions orders that dealt with the filing of a groundless lawsuit. We have reviewed the appellate record and could not locate a similar sanctions order with respect to Sliman and SLS Consulting. The only order awarding sanctions to Sliman and SLS Consulting involved a recusal motion, which appears to be irrelevant to the issue raised in McIntyre's brief. To the extent the prayer seeks reversal of this sanction, McIntyre has waived his claim by failing to adequately brief it. *See* TEX.R.APP. P. 38.1.

Fowler. We affirm the trial court's judgment in all other respects.