COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-296-CV

 

 

BOB ARLINGTON                                                                 APPELLANT

 

                                                   V.

 

DOUG MCCLURE                                                                    APPELLEE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








This is a suit on a
note.  Appellant Bob Arlington appeals
from the trial court=s judgment
awarding Appellee Doug McClure the principal sum of $64,500 plus $112,403.08 in
interest and $57,939.62 in attorney=s fees.  In  nine issues, Arlington argues that the trial
court erred by rendering judgment in favor of McClure because (1) the
underlying transaction was an illegal loan from an ERISA plan; (2) there is no
note; (3) Arlington was not the maker of the note; (4) McClure is not the
holder of the note; (5) nothing is owed on the note because McClure paid off
the balance years ago; (6) the suit is barred by limitations; (7) if the trial
court based its judgment on McClure=s suit for debt, it erred by so doing; and (8) if the trial court
based its judgment on McClure=s quantum meruit claim, it erred by so doing.  We affirm.

                                Factual and Procedural History

In 1999, Arlington, McClure,
and Merv Reagan agreed to acquire and develop real property in Hood
County.  To this end, they formed a
corporation, BMD Eagles Crest, Inc., with Arlington, McClure, and Reagan each
owning a third of the corporation. 
Arlington was to serve as president of BMD and would be primarily
responsible for its management and operation. 


Arlington, McClure, and
Reagan agreed to fund the purchase of the subject property with a loan from the
employee retirement plan (Athe Plan@) of McClure=s business, McClure Development, Inc. 
They agreed that Arlington would sign the note as maker, and the note
would be secured by a deed of trust lien on the property.  They further agreed that they would each be
obligated to repay one third of the loan and that they would each contribute to
BMD one third of the development costs, annual taxes, holding costs, and
maintenance expenses associated with the property. 








BMD closed on the property on
October 14, 1999.  At the closing,
Arlington signed a promissory note in the principal sum of $275,000 payable to
the Plan.  He also signed a deed of trust
granting the Plan a lien on the property to secure the note. 

Arlington made some of the
interest payments on the note until May 14, 2001.  Meanwhile, Arlington, McClure, and Reagan
contributed $41,000 each to BMD for the property=s development.  On May 11, 2000,
Reagan purchased two of the property=s six platted lots from BMD for $146,000, which was paid to the Plan
and credited against the note, leaving a principal balance of $129,000.  Reagan then relinquished his one-third
interest in BMD, and Arlington and McClure each owned half of BMD
thereafter.  

On August 31, 2000, McClure
paid to the Plan the entire balance owed on the note. 

On March 15, 2001, Arlington,
individually, and McClure, as the Plan=s trustee, signed a written agreement extending the maturity date of
the note to June 30, 2001.  On May 14,
2002, they signed another agreement extending the maturity date of the note
until someone other than Reagan purchased one of the remaining lots.  McClure signed the second extension in his
individual capacity.  The second
extension recited the amount owed on the note as of May 14, 2002, as $64,500. 








Although McClure had already
paid the note in full, the Plan demanded payment on the note from Arlington on
June 4, 2002.  On December 13, 2004, the
Plan notified Arlington of its intent to post the property for foreclosure
under the note and deed of trust. 

Arlington and BMD sued the
Plan on January 3, 2005, to enjoin the foreclosure and to have the note and
deed of trust declared invalid and unenforceable.  In a single pleading filed on January 24,
2005, the Plan filed a counterclaim and McClure intervened in the suit, seeking
judgment for the principal amount of the 
note plus interest, attorney=s fees, and costs.[2]


Arlington took McClure=s deposition on January 5, 2006, and learned that McClure had paid the
balance on the note on August 31, 2000. 
After the deposition, on January 25, 2006, McClureCindividually and as Plan trusteeCexecuted a document to Amemorialize@ and Aacknowledge@ the
transfer of the note and the deed of trust from the Plan to McClure. 








The parties tried the case to
the bench.  The trial court rendered
judgment in favor of McClure for $64,500 on the note plus $112,403.08 in
interest and $57,939.62 in attorney=s fees and costs, for a total judgment of $170,342.70; it denied
relief to all other parties.  Arlington
filed this appeal.

                                       Standard of Review

Findings of fact entered in a case tried to the court have
the same force and dignity as a jury=s answers to jury
questions.  Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). 
The trial court=s findings of fact are reviewable for
legal and factual sufficiency of the evidence to support them by the same
standards that are applied in reviewing evidence supporting a jury=s answer.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  When findings of fact are filed and
are unchallenged, they occupy the same position and are entitled to the same
weight as the verdict of a jury; they are binding on an appellate court unless
the contrary is established as a matter of law or there is no evidence to
support the finding.  McGalliard v.
Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Raman Chandler Props., L.C.
v. Caldwell=s Creek Homeowners Ass=n, Inc., 178 S.W.3d 384,
390 (Tex. App.CFort Worth 2005, pet. denied).  








Arlington argues that the
trial court=s judgment
is incorrect as a matter of law for several reasons.  A party asserting a Amatter of law@ issue must
surmount two hurdles. First, we examine the record for any evidence supporting
the trial court's findings, disregarding all evidence to the contrary. Second,
if there is no evidence to support the findings, we examine the entire record
to see if the contrary proposition is established as a matter of law. Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.1989).

                                             Discussion

1.                 
Illegality under ERISA as a bar to enforcing the
note.

In his first issue, Arlington argues that the note
is unenforceable because the underlying transaction was an illegal loan from an
ERISA plan to an entity in which a Aparty
in interest@CMcClureCowned
an interest.  See 29 U.S.C.A. ' 1106 (West 1999) (prohibiting loan or
transfer of assets from an ERISA plan to or for the benefit of a party in
interest).








Courts generally will not enforce illegal
contracts.  Plumlee v. Paddock,  832 S.W.2d 757, 759 (Tex. App.CFort Worth 1992, writ denied).  The policy is not to protect or punish either
party to the contract, but is for the benefit of the public.  Id. 
Courts will generally leave the parties to an illegal contract where
it finds them and are no more likely to aid one attempting to enforce such a
contract than they are disposed in favor of the party who uses the illegality
to avoid liability.   Id.  But where the illegality does not appear
on the face of the contract, it will not be held void unless the facts showing
its illegality are before the court.  Lewis
v. Davis, 145 Tex. 468, 199 S.W.2d 146, 149 (1947).  Illegality is an affirmative defense, and the
party seeking to avoid the contract has the burden of proving its
illegality.  Tex. R. Civ. P.  94.

In this case, the contract in
question is not illegal on its face, and Arlington failed to prove its
illegality as a matter of law becauseCas McClure points outCERISA contains exceptions that permit loans even to a party in
interest.  The Plan made the loan
underlying the note to Arlington, individually, 
not to McClure or BMD.  Thus,
under the provisions of ERISA identified by Arlington, the loan was not on its
face a prohibited loan to a party in interest. 
See 29 U.S.C.A. ' 1106.  Other evidence, and
especially McClure=s own
testimony, shows that Arlington, individually, was a strawman and that McClure
intended the loan to benefit BMD; McClure testified that he knew he was not
supposed to loan money from the Plan to an entity with which he was involved
and that he told Arlington that he (McClure) could not loan the money to
himself and would therefore loan the money to Arlington, personally, who as
manager of BMD could Ado with it
as necessary.@ 








But ERISA provides for at
least two exceptions to the prohibition on loans from a plan to a party in
interest.  Section 1101(a)(1) provides
that the prohibition does not apply to Aa plan which is unfunded and is maintained by an employer primarily
for the purpose of providing deferred compensation for a select group of
management or highly compensated employees.@  Id. ' 1101(a)(1) (West 1999).  Second, the prohibition does not apply to A[a]ny loans made by the plan to parties in interest who are
participants or beneficiaries of the plan if such loans . . . are available to
all such participants and beneficiaries on a reasonably equivalent basis.@  Id. ' 1108(b)(1) (West 1999). 
Arlington presented no evidence regarding these two exceptions.

Thus, while there is some
evidence that the loan was prohibited by ERISA, the evidence does not prove
that the loan was illegal as a matter of law. 
Thus, Arlington did not carry his burden of proving illegality as a
matter of law, and we overrule his first issue. 
See Sterner, 767 S.W.2d at 690.

2.     The existence of the note.

In his second issue,
Arlington argues that the trial court erred by granting judgment on the note Abecause there is no note.@  Arlington explains that
because the note did not reflect the reality of the transactionCa loan from the Plan to BMDCthe note is a sham, which, he argues, precludes McClure from
establishing the existence of the note as a matter of law.  See Doncaster v. Hernaiz, 161 S.W.3d
594, 602 (Tex. App.CSan Antonio
2005, no pet.) (setting out essential elements of suit on a note, including
existence of a note).








Arlington cites no authority
for the proposition that a note is not a note when it does not accurately
reflect the reality of a transaction, and our own research finds none.  McClure proved the existence of a note by
offering the note itself into evidence. 
We therefore overrule Appellant=s second issue.

3.     Arlington as the maker of
the note.

In a similar vein, Arlington
argues in his third issue that the trial court=s judgment is erroneous as a matter of law because Arlington was not
the maker of the note.  See id. (identifying
the defendant=s signature
on a note as an essential element of a suit on a note).  Arlington contends that all three parties to
the transactionCArlington,
McClure, and ReaganCagree that
Arlington signed the note in a representative capacity and, therefore, that
Arlington is not personally liable on the note. 
In this connection, Arlington cites section 3.402(b) of the business and
commerce code, which provides in pertinent part, Athe representative is liable on the instrument unless the
representative proves that the original parties did not intend the
representative to be liable on the instrument.@  Tex. Bus. & Comm. Code Ann. ' 3.402(b) (Vernon 2002).








The testimony cited by
Arlington does not prove conclusively that the original parties did not intend
him to be liable on the instrument. 
McClure testified, A[W]e made an agreement . . . that [Reagan] would be responsible -- to
[Arlington] for one-third of it and I personally would be responsible to
[Arlington] for one-third of it, and he would be responsible for the other
third.@  Reagan testified, AMy understanding was that we each owed a third of it.@ Arlington alone testified that his own obligation on the note was
only through his participation in BMD.[3]  Rather than prove conclusively that Arlington
was not personally liable for the note or any part of it, the foregoing
testimony shows that McClure and Reagan intended that Arlington would be liable
for a third of the note and, by an oral side agreement, that McClure and Reagan
would assume liability for one-third each.

Arlington poses a
hypothetical: If Reagan had failed to pay one-third of the note, could McClure
or the Plan sue Reagan on the note? 
Arlington says the answer is Ano,@ and we do
not disagree.  Reagan did not sign the
note; Arlington did.  If McClure had
attempted to enforce the note against Reagan, this litigation might have had a
different result.  But the undisputable
fact remains that Arlington signed the note, and the evidence does not prove
conclusively that the parties did not intend Arlington to be liable on the instrument.  Therefore, we overrule Arlington=s third issue.

 

 








4.     McClure as the holder of
the note.

In his fourth issue,
Arlington argues that McClure cannot recover on the note because he is not the
note=s holder.  See Doncaster,
161 S.W.3d at 602 (identifying the plaintiff=s status as holder of the note as an essential element of a suit to
enforce the note).  Arlington contends that
because the Plan did not transfer the note to McClure until five and half years
after McClure paid the note, McClure does not have the right to enforce the
note. 

Arlington cites the following
parts of business and commerce code section 3.203 in support of his argument:

(a)
An instrument is transferred when it is delivered by a person other than its
issuer for the purpose of giving to the person receiving delivery the right to
enforce the instrument.

 

(b)
Transfer of an instrument, whether or not the transfer is a negotiation, vests
in the transferee any right of the transferor to enforce the instrument,
including any right as a holder in due course. The transferee cannot acquire
rights of a holder in due course by a transfer, directly or indirectly, from a
holder in due course if the transferee engaged in fraud or illegality affecting
the instrument.

 

Tex. Bus. & Comm.
Code Ann. ' 3.203(a)-(b) (Vernon 2002). 
Arlington argues that there is no evidence that the Plan delivered the
note to McClure before January 26, 2006; thus, he contends, McClure is not
entitled to enforce the note.








Arlington=s argument implies that something prohibited the Plan from delivering
the note to Arlington on January 26, 2006, but he does not explain why the
January 26 delivery and transfer was not effective or why the passage of time
between McClure=s payment of
the note and delivery is significant. 
Accordingly, we hold that McClure was entitled to enforce the note.  See Tex.
Bus. & Comm. Code Ann. ' 3.301 (Vernon 2002) (identifying persons entitled to enforce
instruments, including the holder of the instrument and a nonholder in
possession of the instrument who has the rights of a holder).

Arlington also argues that
section 3.203(b) precludes McClure from enforcing the note because he engaged
in Aillegality affecting the instrument@ when he caused the Plan to make a loan prohibited by ERISA.  But as we have already concluded, Arlington
failed to prove that ERISA prohibited the transaction as a matter of law, and
we reject his argument that the alleged illegality precludes McClure from
enforcing the note.  We overrule
Arlington=s fourth
issue.

(5)    McClure=s payment of the note as a bar to recovery.








In his fifth issue, Arlington
contends that nothing is owed on the note because McClure paid the note in full
on August 31, 2000.  See Doncaster,
161 S.W.3d at 602 (identifying a balance due and owing under a note as an
essential element of a suit on a note). Arlington cites no authority to support
his argument on this issue.  Rule 38.1(h)
requires a brief to contain both citation to authority and substantive analysis
in regard to an issue, and the failure to include either waives an issue on
appeal.  Tex. R. App. P. 38.1(h); Huey v. Huey, 200 S.W.3d 851,
854 (Tex. App.CDallas 2006,
no pet.); McIntyre v. Wilson, 50 S.W.3d 674, 682 (Tex. App.CDallas 2001, pet. denied).

Moreover, business and
commerce code section 3.602(a) provides that Aan instrument is paid to the extent payment is made . . . by or on
behalf of a party obliged to pay the instrument.@  Tex. Bus. & Comm. Code Ann. ' 3.602(a) (Vernon Supp. 2007). 
Here, the evidence clearly shows that while McClure repaid the Plan, he
did not make such payment on behalf of Arlington.  Thus, the note was not Apaid,@ and a
balance was due and owing at the time of trial. 
We overrule Arlington=s fifth issue.

(6)    Limitations








In his sixth issue, Arlington
argues that McClure=s suit is
barred by limitations.  His argument
comprises two alternative thrusts: First, he argues that the four-year statute
of limitations set out in civil practice and remedies code section 16.035,
rather than the six-year limitations period set out in business and commerce
code section 3.118, applies because McClure=s suit is an action involving a real property lien.  Second, he argues in the alternative that
McClure=s suit is really an attempt to enforce the oral side deal between
McClure, Arlington, and Reagan rather than a suit on the note, and the oral
side agreement is subject to a four-year statute of limitations. 

Business and commerce code
section 3.118(a) establishes a six-year limitations period for an action to
enforce the obligation of a party to pay a note.  Id. ' 3.118(a) (Vernon 2002).  But subsection (h) provides that section
3.118 does not apply to an action involving a real property lien covered by
civil practice and remedies code section 16.035.  Id. ' 3.118(h).  Civil practice and
remedies code section 16.035 establishes a four-year limitations period for
suits for the recovery of real property under a real property lien or the
foreclosure of a real property lien.  Tex. Civ. Prac. & Rem. Code Ann. ' 16.035(a)
(Vernon 2002).








Arlington argues that McClure=s suit is governed by section 16.035=s four-year limitations period because it involves a real property
lien.  The Corpus Christi court rejected
a similar argument in Aguero v. Ramirez, 70 S.W.3d 372 (Tex. App.CCorpus Christi 2002, pet. denied). 
In that case, Aguero signed a note payable to Ramirez, secured by a deed
of trust and a vendor=s lien.  Id. at 373.  Aguero defaulted, and five years later
Ramirez filed suit on the note.  Id.  Aguero argued that Ramirez=s suit was barred by section 16.035=s four-year limitations period; Ramirez argued that his suit was
timely under section 3.118(a)=s six-year limitations period.  Id.
at 373B74.  The court of appeals held that the six-year
statute applied.  Id. at 375.  Where there is a debt secured by a note,
which is, in turn, secured by a lien, the note and lien constitute separate
obligations.  Id. at 374.  Because Ramirez sued to enforce the note, not
the lien, the six-year statute applied:

If
Ramirez was suing to enforce the lien, the deed of trust, or seeking to
foreclose on the property used as security, the four‑year statute of
limitations would apply.  After the
expiration of a four‑year period, the right to sue to enforce the lien
and to foreclose on the property is lost. 
[Citation omitted.]  However,
Ramirez is only suing to enforce payment on the promissory note.  His suit is still actionable.

 

Id. at
375.

Like Ramirez, McClure sued to
enforce the note, not to enforce the lien or foreclose on the property.  Therefore, section 3.118(a)=s six-year limitations period applies. 
The note=s original
maturity date was May 14, 2000.  McClure
intervened in the lawsuit and asserted his suit on the note on January 24,
2005, less than six years later.  Thus,
even if we ignore the two agreements extending the note=s maturity date, McClure=s claim was timely under the six-year statute of limitations.








In the second part of his
limitations argument, Arlington contends that McClure=s suit is subject to the four-year limitations period set out in civil
practice and remedies code section 16.004(a)(3) because McClure is really suing
to enforce the oral side agreement between McClure, Arlington, and Reagan to
each pay one-third of the note.  See Tex. Civ. Prac. & Rem. Code Ann. '
16.004(a)(3) (Vernon 2002) (establishing a four-year limitations period on
suits for debt).  Arlington reasons that
if McClure were actually suing on the note, rather than the side agreement, he
would have claimed the full amount of the note less payments, not one-third of
the note less payments.  He also points
to McClure=s post-trial
brief, in which McClure stated, AAll McClure is requesting is that Arlington pay his one-third per the
parties[>] agreement.@ 

We disagree with Arlington=s characterization of McClure=s suit.  On its face, McClure=s claim is a suit on the note. 
McClure could have sued Arlington for the face value of the note less
payments; had he done so, Arlington could have asserted the side agreement as a
defense to two-thirds of the debt.  The
fact that McClure limited his demand under the note in light of the side
agreement works in Arlington=s favor by limiting his liability on the note by two thirds; it does
not convert McClure=s claim from
a suit on the note to a suit on the side agreement.  We therefore hold that McClure=s claim is timely under section 3.118(a)=s six-year limitations period, and we overrule Arlington=s sixth issue.

                                             Conclusion








Having overruled Arlington=s first six issues, we need not reach his seventh and eighth issues,
in which he argues that McClure was not entitled to recover on his alternative
claims for debt and quantum meruit.  See
Tex. R. App. P. 47.1.  We affirm the trial court=s judgment.

 

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   HOLMAN, GARDNER, and MCCOY, JJ.

 

DELIVERED:  March 20, 2008











[1]See Tex. R. App. P. 47.4.





[2]McClure
also sued Arlington on a second, $10,000 note. 
The trial court ultimately granted McClure a directed verdict on the
second note.  According to McClure=s
brief, Arlington paid the second note after trial, and that note is no longer
in controversy.  





[3]Arlington
also cites a post-trial brief in which McClure stated, AThere
is no dispute that Arlington signed in a representative capacity . . . .@  McClure has abandoned that statement on
appeal; in his appellate brief, he states, ABut the note itself was in
evidence, and it shows that Arlington signed the note individually.@