

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

### NO. 2-06-296-CV

---

BOB ARLINGTON                                                      APPELLANT

V.

DOUG MCCLURE                                                        APPELLEE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

### MEMORANDUM OPINION[1]

------------

This is a suit on a note. Appellant Bob Arlington appeals from the trial

court's judgment awarding Appellee Doug McClure the principal sum of

$64,500 plus $112,403.08 in interest and $57,939.62 in attorney's fees. In

nine issues, Arlington argues that the trial court erred by rendering judgment in

favor of McClure because (1) the underlying transaction was an illegal loan from

---

[1] *See* TEX. R. APP. P. 47.4.

an ERISA plan; (2) there is no note; (3) Arlington was not the maker of the note; (4) McClure is not the holder of the note; (5) nothing is owed on the note because McClure paid off the balance years ago; (6) the suit is barred by limitations; (7) if the trial court based its judgment on McClure's suit for debt, it erred by so doing; and (8) if the trial court based its judgment on McClure's quantum meruit claim, it erred by so doing. We affirm.

## Factual and Procedural History

In 1999, Arlington, McClure, and Merv Reagan agreed to acquire and develop real property in Hood County. To this end, they formed a corporation, BMD Eagles Crest, Inc., with Arlington, McClure, and Reagan each owning a third of the corporation. Arlington was to serve as president of BMD and would be primarily responsible for its management and operation.

Arlington, McClure, and Reagan agreed to fund the purchase of the subject property with a loan from the employee retirement plan ("the Plan") of McClure's business, McClure Development, Inc. They agreed that Arlington would sign the note as maker, and the note would be secured by a deed of trust lien on the property. They further agreed that they would each be obligated to repay one third of the loan and that they would each contribute to BMD one third of the development costs, annual taxes, holding costs, and maintenance expenses associated with the property.

2

BMD closed on the property on October 14, 1999. At the closing, Arlington signed a promissory note in the principal sum of $275,000 payable to the Plan. He also signed a deed of trust granting the Plan a lien on the property to secure the note.

Arlington made some of the interest payments on the note until May 14, 2001. Meanwhile, Arlington, McClure, and Reagan contributed $41,000 each to BMD for the property's development. On May 11, 2000, Reagan purchased two of the property's six platted lots from BMD for $146,000, which was paid to the Plan and credited against the note, leaving a principal balance of $129,000. Reagan then relinquished his one-third interest in BMD, and Arlington and McClure each owned half of BMD thereafter.

On August 31, 2000, McClure paid to the Plan the entire balance owed on the note.

On March 15, 2001, Arlington, individually, and McClure, as the Plan's trustee, signed a written agreement extending the maturity date of the note to June 30, 2001. On May 14, 2002, they signed another agreement extending the maturity date of the note until someone other than Reagan purchased one of the remaining lots. McClure signed the second extension in his individual capacity. The second extension recited the amount owed on the note as of May 14, 2002, as $64,500.

3

Although McClure had already paid the note in full, the Plan demanded payment on the note from Arlington on June 4, 2002. On December 13, 2004, the Plan notified Arlington of its intent to post the property for foreclosure under the note and deed of trust.

Arlington and BMD sued the Plan on January 3, 2005, to enjoin the foreclosure and to have the note and deed of trust declared invalid and unenforceable. In a single pleading filed on January 24, 2005, the Plan filed a counterclaim and McClure intervened in the suit, seeking judgment for the principal amount of the note plus interest, attorney's fees, and costs.[2]

Arlington took McClure's deposition on January 5, 2006, and learned that McClure had paid the balance on the note on August 31, 2000. After the deposition, on January 25, 2006, McClure—individually and as Plan trustee—executed a document to "memorialize" and "acknowledge" the transfer of the note and the deed of trust from the Plan to McClure.

The parties tried the case to the bench. The trial court rendered judgment in favor of McClure for $64,500 on the note plus $112,403.08 in interest and

---

[2] McClure also sued Arlington on a second, $10,000 note. The trial court ultimately granted McClure a directed verdict on the second note. According to McClure's brief, Arlington paid the second note after trial, and that note is no longer in controversy.

$57,939.62 in attorney's fees and costs, for a total judgment of $170,342.70; it denied relief to all other parties. Arlington filed this appeal.

## Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994). When findings of fact are filed and are unchallenged, they occupy the same position and are entitled to the same weight as the verdict of a jury; they are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 390 (Tex. App.—Fort Worth 2005, pet. denied).

Arlington argues that the trial court's judgment is incorrect as a matter of law for several reasons. A party asserting a "matter of law" issue must surmount two hurdles. First, we examine the record for any evidence supporting the trial court's findings, disregarding all evidence to the contrary.

5

Second, if there is no evidence to support the findings, we examine the entire record to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

**Discussion**

**1.    Illegality under ERISA as a bar to enforcing the note.**

In his first issue, Arlington argues that the note is unenforceable because the underlying transaction was an illegal loan from an ERISA plan to an entity in which a "party in interest"—McClure—owned an interest. *See* 29 U.S.C.A. § 1106 (West 1999) (prohibiting loan or transfer of assets from an ERISA plan to or for the benefit of a party in interest).

Courts generally will not enforce illegal contracts. *Plumlee v. Paddock,* 832 S.W.2d 757, 759 (Tex. App.—Fort Worth 1992, writ denied). The policy is not to protect or punish either party to the contract, but is for the benefit of the public. *Id.* Courts will generally leave the parties to an illegal contract where it finds them and are no more likely to aid one attempting to enforce such a contract than they are disposed in favor of the party who uses the illegality to avoid liability. *Id.* But where the illegality does not appear on the face of the contract, it will not be held void unless the facts showing its illegality are before the court. *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146,

6

149 (1947). Illegality is an affirmative defense, and the party seeking to avoid the contract has the burden of proving its illegality. TEX. R. CIV. P. 94.

In this case, the contract in question is not illegal on its face, and Arlington failed to prove its illegality as a matter of law because—as McClure points out—ERISA contains exceptions that permit loans even to a party in interest. The Plan made the loan underlying the note to Arlington, individually, not to McClure or BMD. Thus, under the provisions of ERISA identified by Arlington, the loan was not on its face a prohibited loan to a party in interest. *See* 29 U.S.C.A. § 1106. Other evidence, and especially McClure's own testimony, shows that Arlington, individually, was a strawman and that McClure intended the loan to benefit BMD; McClure testified that he knew he was not supposed to loan money from the Plan to an entity with which he was involved and that he told Arlington that he (McClure) could not loan the money to himself and would therefore loan the money to Arlington, personally, who as manager of BMD could "do with it as necessary."

But ERISA provides for at least two exceptions to the prohibition on loans from a plan to a party in interest. Section 1101(a)(1) provides that the prohibition does not apply to "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *Id.*

7

§ 1101(a)(1) (West 1999). Second, the prohibition does not apply to "[a]ny loans made by the plan to parties in interest who are participants or beneficiaries of the plan if such loans . . . are available to all such participants and beneficiaries on a reasonably equivalent basis." *Id.* § 1108(b)(1) (West 1999). Arlington presented no evidence regarding these two exceptions.

Thus, while there is some evidence that the loan was prohibited by ERISA, the evidence does not prove that the loan was illegal as a matter of law. Thus, Arlington did not carry his burden of proving illegality as a matter of law, and we overrule his first issue. *See Sterner*, 767 S.W.2d at 690.

## 2. The existence of the note.

In his second issue, Arlington argues that the trial court erred by granting judgment on the note "because there is no note." Arlington explains that because the note did not reflect the reality of the transaction—a loan from the Plan to BMD—the note is a sham, which, he argues, precludes McClure from establishing the existence of the note as a matter of law. *See Doncaster v. Hernaiz*, 161 S.W.3d 594, 602 (Tex. App.—San Antonio 2005, no pet.) (setting out essential elements of suit on a note, including existence of a note).

Arlington cites no authority for the proposition that a note is not a note when it does not accurately reflect the reality of a transaction, and our own

8

research finds none. McClure proved the existence of a note by offering the note itself into evidence. We therefore overrule Appellant's second issue.

**3. Arlington as the maker of the note.**

In a similar vein, Arlington argues in his third issue that the trial court's judgment is erroneous as a matter of law because Arlington was not the maker of the note. *See id.* (identifying the defendant's signature on a note as an essential element of a suit on a note). Arlington contends that all three parties to the transaction—Arlington, McClure, and Reagan—agree that Arlington signed the note in a representative capacity and, therefore, that Arlington is not personally liable on the note. In this connection, Arlington cites section 3.402(b) of the business and commerce code, which provides in pertinent part, "the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument." TEX. BUS. & COMM. CODE ANN. § 3.402(b) (Vernon 2002).

The testimony cited by Arlington does not prove conclusively that the original parties did not intend him to be liable on the instrument. McClure testified, "[W]e made an agreement . . . that [Reagan] would be responsible -- to [Arlington] for one-third of it and I personally would be responsible to [Arlington] for one-third of it, and he would be responsible for the other third." Reagan testified, "My understanding was that we each owed a third of it."

9

Arlington alone testified that his own obligation on the note was only through his participation in BMD.[3]  Rather than prove conclusively that Arlington was not personally liable for the note or any part of it, the foregoing testimony shows that McClure and Reagan intended that Arlington would be liable for a third of the note and, by an oral side agreement, that McClure and Reagan would assume liability for one-third each.

Arlington poses a hypothetical: If Reagan had failed to pay one-third of the note, could McClure or the Plan sue Reagan on the note?  Arlington says the answer is "no," and we do not disagree.  Reagan did not sign the note; Arlington did.  If McClure had attempted to enforce the note against Reagan, this litigation might have had a different result.  But the undisputable fact remains that Arlington signed the note, and the evidence does not prove conclusively that the parties did not intend Arlington to be liable on the instrument.  Therefore, we overrule Arlington's third issue.

---

[3] Arlington also cites a post-trial brief in which McClure stated, "There is no dispute that Arlington signed in a representative capacity . . . ."  McClure has abandoned that statement on appeal; in his appellate brief, he states, "But the note itself was in evidence, and it shows that Arlington signed the note individually."

**4. McClure as the holder of the note.**

In his fourth issue, Arlington argues that McClure cannot recover on the note because he is not the note's holder. *See Doncaster*, 161 S.W.3d at 602 (identifying the plaintiff's status as holder of the note as an essential element of a suit to enforce the note). Arlington contends that because the Plan did not transfer the note to McClure until five and half years after McClure paid the note, McClure does not have the right to enforce the note.

Arlington cites the following parts of business and commerce code section 3.203 in support of his argument:

> (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
>
> (b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course. The transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

TEX. BUS. & COMM. CODE ANN. § 3.203(a)-(b) (Vernon 2002). Arlington argues that there is no evidence that the Plan delivered the note to McClure before January 26, 2006; thus, he contends, McClure is not entitled to enforce the note.

11

Arlington's argument implies that something prohibited the Plan from delivering the note to Arlington on January 26, 2006, but he does not explain why the January 26 delivery and transfer was not effective or why the passage of time between McClure's payment of the note and delivery is significant. Accordingly, we hold that McClure was entitled to enforce the note. *See* TEX. BUS. & COMM. CODE ANN. § 3.301 (Vernon 2002) (identifying persons entitled to enforce instruments, including the holder of the instrument and a nonholder in possession of the instrument who has the rights of a holder).

Arlington also argues that section 3.203(b) precludes McClure from enforcing the note because he engaged in "illegality affecting the instrument" when he caused the Plan to make a loan prohibited by ERISA. But as we have already concluded, Arlington failed to prove that ERISA prohibited the transaction as a matter of law, and we reject his argument that the alleged illegality precludes McClure from enforcing the note. We overrule Arlington's fourth issue.

**(5)    McClure's payment of the note as a bar to recovery.**

In his fifth issue, Arlington contends that nothing is owed on the note because McClure paid the note in full on August 31, 2000. *See Doncaster*, 161 S.W.3d at 602 (identifying a balance due and owing under a note as an essential element of a suit on a note). Arlington cites no authority to support

12

his argument on this issue. Rule 38.1(h) requires a brief to contain both citation to authority and substantive analysis in regard to an issue, and the failure to include either waives an issue on appeal. TEX. R. APP. P. 38.1(h); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex. App.—Dallas 2001, pet. denied).

Moreover, business and commerce code section 3.602(a) provides that "an instrument is paid to the extent payment is made . . . by or on behalf of a party obliged to pay the instrument." TEX. BUS. & COMM. CODE ANN. § 3.602(a) (Vernon Supp. 2007). Here, the evidence clearly shows that while McClure repaid the Plan, he did not make such payment on behalf of Arlington. Thus, the note was not "paid," and a balance was due and owing at the time of trial. We overrule Arlington's fifth issue.

**(6)    Limitations**

In his sixth issue, Arlington argues that McClure's suit is barred by limitations. His argument comprises two alternative thrusts: First, he argues that the four-year statute of limitations set out in civil practice and remedies code section 16.035, rather than the six-year limitations period set out in business and commerce code section 3.118, applies because McClure's suit is an action involving a real property lien. Second, he argues in the alternative that McClure's suit is really an attempt to enforce the oral side deal between

13

McClure, Arlington, and Reagan rather than a suit on the note, and the oral side agreement is subject to a four-year statute of limitations.

Business and commerce code section 3.118(a) establishes a six-year limitations period for an action to enforce the obligation of a party to pay a note. *Id.* § 3.118(a) (Vernon 2002). But subsection (h) provides that section 3.118 does not apply to an action involving a real property lien covered by civil practice and remedies code section 16.035. *Id.* § 3.118(h). Civil practice and remedies code section 16.035 establishes a four-year limitations period for suits for the recovery of real property under a real property lien or the foreclosure of a real property lien. TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) (Vernon 2002).

Arlington argues that McClure's suit is governed by section 16.035's four-year limitations period because it involves a real property lien. The Corpus Christi court rejected a similar argument in *Aguero v. Ramirez*, 70 S.W.3d 372 (Tex. App.—Corpus Christi 2002, pet. denied). In that case, Aguero signed a note payable to Ramirez, secured by a deed of trust and a vendor's lien. *Id.* at 373. Aguero defaulted, and five years later Ramirez filed suit on the note. *Id.* Aguero argued that Ramirez's suit was barred by section 16.035's four-year limitations period; Ramirez argued that his suit was timely under section 3.118(a)'s six-year limitations period. *Id.* at 373–74. The court of appeals held

14

that the six-year statute applied.  *Id.* at 375.  Where there is a debt secured by a note, which is, in turn, secured by a lien, the note and lien constitute separate obligations.  *Id.* at 374.  Because Ramirez sued to enforce the note, not the lien, the six-year statute applied:

> If Ramirez was suing to enforce the lien, the deed of trust, or seeking to foreclose on the property used as security, the four-year statute of limitations would apply.  After the expiration of a four-year period, the right to sue to enforce the lien and to foreclose on the property is lost.  [Citation omitted.]  However, Ramirez is only suing to enforce payment on the promissory note.  His suit is still actionable.

*Id.* at 375.

Like Ramirez, McClure sued to enforce the note, not to enforce the lien or foreclose on the property.  Therefore, section 3.118(a)'s six-year limitations period applies.  The note's original maturity date was May 14, 2000.  McClure intervened in the lawsuit and asserted his suit on the note on January 24, 2005, less than six years later.  Thus, even if we ignore the two agreements extending the note's maturity date, McClure's claim was timely under the six-year statute of limitations.

In the second part of his limitations argument, Arlington contends that McClure's suit is subject to the four-year limitations period set out in civil practice and remedies code section 16.004(a)(3) because McClure is really suing to enforce the oral side agreement between McClure, Arlington, and

15

Reagan to each pay one-third of the note. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (Vernon 2002) (establishing a four-year limitations period on suits for debt). Arlington reasons that if McClure were actually suing on the note, rather than the side agreement, he would have claimed the full amount of the note less payments, not one-third of the note less payments. He also points to McClure's post-trial brief, in which McClure stated, "All McClure is requesting is that Arlington pay his one-third per the parties['] agreement."

We disagree with Arlington's characterization of McClure's suit. On its face, McClure's claim is a suit on the note. McClure could have sued Arlington for the face value of the note less payments; had he done so, Arlington could have asserted the side agreement as a defense to two-thirds of the debt. The fact that McClure limited his demand under the note in light of the side agreement works in Arlington's favor by limiting his liability on the note by two thirds; it does not convert McClure's claim from a suit on the note to a suit on the side agreement. We therefore hold that McClure's claim is timely under section 3.118(a)'s six-year limitations period, and we overrule Arlington's sixth issue.

**Conclusion**

Having overruled Arlington's first six issues, we need not reach his seventh and eighth issues, in which he argues that McClure was not entitled to

16

recover on his alternative claims for debt and quantum meruit.  *See* TEX. R. APP.

P. 47.1.  We affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL A:   HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED:  March 20, 2008