**Ben Richard DRUM, Appellant,**

v.

**Cynthia Figueroa CALHOUN, American States Insurance Company Safeco Surety, and Unitrin Business Insurance, Appellees.**

**No. 05–07–01520–CV.**

Court of Appeals of Texas, Dallas.

Aug. 25, 2009.

Rehearing Overruled Jan. 7, 2010.

Ben Richard Drum, Garland, pro se.

James W. Hamel, Brandon K. Bains, Langley Weinstein Hamel LLP, Mary Anne Haren–Gallagher, Asst. Dist. Atty., Michele Tapia, Dallas, John K. Vaughan, Stacey D. Walvoord, Grand Prairie, for appellees.

Before Justices MORRIS, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Appellant Ben Richard Drum, appearing pro se, appeals from the trial court's orders declaring him a vexatious litigant and dismissing his claims with prejudice for failure to post the required security. We overrule Drum's issues and affirm the trial court's orders declaring Drum a vexatious

litigant and dismissing his claims with prejudice.

## BACKGROUND

The IRS filed five notices of federal income tax liens in the Dallas County real property records against Drum's property. According to the notices, a total of $203,415.98 for multiple tax periods was assessed against Drum and/or Traci L. Drum and remains unpaid.

Appearing pro se, Drum filed an "Original Civil Complaint for Money Damages" against former Dallas County Clerk Cynthia Figueroa Calhoun, and her primary and secondary bond carriers, American States Insurance Company Safeco Surety and Unitrin Business Insurance. In his "Complaint," Drum alleges, among other things, that the notices of federal income tax liens filed against his homestead are "statutorily unauthorized, libelous, invalid, inchoate, non-judgment [and] non-abstracted," and that "Calhoun has violated the mandatory, official and ministerial terms and conditions of the people's office by knowingly and willingly allowing fraudulent liens against [Drum] into the Dallas County Records Index, with intentional, knowing and willing, criminal intent and with deliberate indifference and gross negligence to [Drum's] rights."

In addition to answers and other responsive pleadings filed by defendants, Calhoun filed a motion pursuant to chapter 11 of the Texas Civil Practice and Remedies Code asking the trial court to (1) declare Drum a vexatious litigant, (2) stay proceedings, and (3) order Drum to furnish a $10,000 security to cover the expenses Calhoun incurred in connection with the lawsuit. In that motion, Calhoun stated that

Drum's lawsuit is his third lawsuit against Calhoun based on the notices of federal income tax liens filed in the Dallas County real property records against Drum's property. Calhoun also states that Drum's first lawsuit against Calhoun was "finally determined adversely to Drum." American States also filed a motion to declare Drum a vexatious litigant, and the trial court held a hearing on the motions.

After reviewing the pleadings and hearing the arguments from both sides, the trial court orally announced, on April 20, 2007, that it was declaring Drum to be a vexatious litigant. Drum objected to the trial court's announcement on the basis that the trial judge was "disqualified" and apparently handed the trial court a motion to disqualify the trial judge, which was denied later that same day by the presiding judge of the administrative judicial district.

On April 24, 2007, the trial court signed an order declaring Drum a vexatious litigant and requiring him to post $10,000 with the district clerk as security within 30 days. The trial court's order also stated that if the security was not posted, the lawsuit would be dismissed. Drum filed multiple requests for findings of fact and conclusions of law, and the trial court declined to issue findings of fact and conclusions of law.[1]

After Drum's deadline to post the security expired, defendants filed motions to dismiss Drum's lawsuit. On August 10, 2007, Drum filed another motion to disqualify the trial judge, which was denied by the presiding judge of the administrative judicial district. Later that same day, the trial court held a hearing on the mo-

---

1. The trial court sent a letter to the parties, which is included in our record, in which it cited *Willms v. Americas Tire Co., Inc.*, 190 S.W.3d 796 (Tex.App.-Dallas 2006, pet. de-nied), and explained that "a party is not entitled to Findings of Fact and Conclusions of Law after an order determining the party to be a vexatious litigant."

tions to dismiss and signed an order dismissing Drum's claims with prejudice. Drum filed motions for rehearing and for new trial, which the trial court denied.

## Pro Se Appellants

■ We begin by addressing Drum's request at the conclusion of his appellant's brief, asking this Court "that if any technical or procedural deficiencies are found in this appellant brief that ample time would be given to correct and amend such deficiencies so that justice might be served." Although we construe pro se pleadings and briefs liberally, a pro se litigant is still required to follow the same rules and laws as litigants represented by a licensed attorney. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex.1978); *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 693 (Tex.App.-Dallas 2008, no pet.). Otherwise a pro se litigant would have an unfair advantage over a litigant represented by a licensed attorney. *Mansfield State Bank*, 573 S.W.2d at 185; *Cooper*, 254 S.W.3d at 693.

■ Among the rules of appellate procedure is a rule that requires an appellant's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(i). And we cannot review an issue on appeal when it is not supported by argument or citation to applicable legal authority. *See Birnbaum v. Law Offices of G. David Westfall, P.C.*, 120 S.W.3d 470, 477 (Tex.App.-Dallas 2003, pet. denied); *see also Siddiqui v. Siddiqui*, No. 14–07–00235–CV, 2009 WL 508260, at *1 (Tex.App.-Houston [14th Dist.] Mar. 3, 2009, pet. denied) (mem. op.) ("Failure to make appropriate argument or provide relevant citations will result in the overruling of the issue raised."). Consequently, we have construed Drum's pleadings and briefs liberally, and have applied the same

rules and laws we apply to all appellants without regard to whether they are represented by counsel.

## Issues on Appeal

Drum raises nine issues on appeal, several of which include multiple subparts. Because Drum asks this Court to reverse the orders declaring him a vexatious litigant and dismissing his claims with prejudice, we address his complaints about those orders first.

## The Trial Court's Order Declaring Drum a Vexatious Litigant

In his third issue, Drum challenges the trial court's order that declared him to be a vexatious litigant and required him to post $10,000 as security for the defendants.

### Standard of Review

We review the trial court's determination that Drum was a vexatious litigant under an abuse of discretion standard. *Harris v. Rose*, 204 S.W.3d 903, 906 (Tex. App.-Dallas 2006, no pet.). Under that standard, we are not free to substitute our own judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). A trial court abuses its discretion if it "acts in an arbitrary or capricious manner without reference to any guiding rules or principles." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998).

### Applicable Law

■ Chapter 11 of the Texas Civil Practice and Remedies Code provides a mechanism to restrict frivolous and vexatious litigation. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 11.051–.057 (Vernon 2002); *Harris v. Rose*, 204 S.W.3d 903, 905 (Tex.App.-Dallas 2006, no pet.). In this chapter, the Texas legislature sought to strike a balance between Texans' right of access to their courts and the public interest in pro-

tecting defendants from those who abuse the Texas court system by systematically filing lawsuits with little or no merit. *Willms v. Americas Tire Co.,* 190 S.W.3d 796, 804 (Tex.App.-Dallas 2006, pet. denied). The purpose behind the statute was to curb vexatious litigation by requiring plaintiffs found by the court to be "vexatious" to post security for costs before proceeding with a lawsuit. *Id.*

Under chapter 11, a defendant may move the court for an order determining that the plaintiff is a vexatious litigant and requiring the plaintiff to furnish a security for the benefit of the moving defendant. TEX. CIV. PRAC. & REM.CODE ANN. § 11.051. A court may find a plaintiff to be a vexatious litigant if the defendant shows that there is a reasonable probability that the plaintiff will not prevail in the litigation and

(1) the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been:

(A) finally determined adversely to the plaintiff;

(B) permitted to remain pending at least two years without having been brought to trial or hearing; or

(C) determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure;

(2) after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, in propria persona, either:

(A) the validity of the determination against the same defendant as to whom the litigation was finally determined; or

(B) the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined; or

(3) the plaintiff has previously been declared to be a vexatious litigant by a state or federal court in an action or proceeding based on the same or substantially similar facts, transition [sic], or occurrence.

*Id.* § 11.054. If the trial court determines that the plaintiff is a vexatious litigant, the trial court is required to order the plaintiff to furnish security for the benefit of the moving defendant and determine the date by which the security must be furnished. *Id.* § 11.055(a), (b). If the plaintiff does not furnish the security within the time set by the trial court's order, the trial court must dismiss the litigation as to the moving defendant. *Id.* § 11.056; *see also Gant v. Grand Prairie Ford, L.P.,* No. 02–06–00386–CV, 2007 WL 2067753, at *4 (Tex.App.-Fort Worth July 19, 2007, pet. denied) (mem. op.) (after trial court declared plaintiff a vexatious litigant, trial court had duty as a matter of statutory law to dismiss plaintiff's lawsuit after plaintiff failed to furnish required security within time ordered).

### Relevant Facts

The parties' arguments below and on appeal, as well as the trial court' ruling and our review of that ruling, are necessarily based in part on procedural events that occurred before this lawsuit was filed. Although the parties dispute the legal effect of certain events, the occurrence of the following events is undisputed.

*Drum's 2004 Lawsuit Regarding the Tax Liens*

In 2004, Drum sued Calhoun and Dallas County in Dallas County District Court,

alleging, among other things, that four notices of federal income tax liens filed in the Dallas County real property records against his property are invalid. Drum sought damages and injunctive relief barring Calhoun from accepting notices of federal income tax liens for filing against his property in the Dallas County property records. In an amended pleading, Drum added eight federal employees as additional defendants. The United States removed the case to federal district court and moved to dismiss the case for failure to state a claim. In response, Drum filed amended petitions and moved for voluntary dismissal of the federal-employee defendants, "so that the case can return to the County of Dallas 191st District Court." Based on his voluntary dismissal of the federal-employee defendants, Drum argued that the federal district court lost jurisdiction and asked the federal district court to remand his case to state court. The United States opposed the motion to remand and argued that the key issue at the center of Drum's complaint—the validity of notices of federal income tax liens— is a federal question. In a memorandum opinion and order issued September 9, 2005, the federal district court granted Drum's motion to dismiss the federal-employee defendants and denied Drum's motion to remand. *See Drum v. Calhoun,* No. 3:05–CV–0932–P, 2005 WL 2217504 (N.D.Tex. Sept. 9, 2005) (mem. op. and order).

In analyzing Drum's claims, that court explained, "[i]n the end, [Drum's] complaint is a challenge to the federal government's assessment of income tax." It concluded that any court order declaring the notices of federal income tax liens invalid or prohibiting them from being filed in the property records would greatly interfere with the federal government's ability to assess and collect taxes, and that the United States was the real party in interest in the case. The court held "that the [federal] Anti–Injunction Act bars [Drum's] claim that the federal income tax was wrongfully assessed against him and that the federal tax lien notices were therefore wrongfully filed against his real property," and dismissed Drum's claims against the United States, Calhoun, and Dallas County with prejudice to refiling. *See Drum,* 2005 WL 2217504, at *4–5.

*Drum's 2006 Motion Regarding the Tax Liens*

On November 7, 2006, Drum filed a pro se, ex parte "Motion for Judicial Review of Instruments Purporting to Create a Lien or Claim" in Dallas County district court pursuant to section 51.903 of the government code.[2] In that motion, Drum alleged that five notices of federal income tax liens filed against his property, including the four notices at issue in Drum's 2004 lawsuit, "should be totally removed from the Dallas County Record" because they are

---

**2.** Section 51.903 of the government code is titled "Action on Fraudulent Lien on Property." TEX. GOV'T CODE ANN. § 51.903 (Vernon 2005). Section 51.903(a) provides a "suggested form" for a motion, verified by affidavit, that a person who believes that a purported lien is fraudulent may file with the district clerk. *Id.* § 51.903(a). Section 51.903(c) provides that a motion under section 51.903 may be ruled on by a district judge having jurisdiction over real property matters in the county where the subject document was filed. *Id.* § 51.903(c). It also provides that "[t]he court's finding may be made solely on a review of the documentation or instrument attached to the motion and without hearing any testimonial evidence." *Id.* "The court's review may be made ex parte without delay or notice of any kind." *Id.* Section 51.903(e) provides that "the district judge shall enter an appropriate finding of fact and conclusion of law." *Id.* § 51.903(e). The moving party is required to send a copy of the finding of fact and conclusion of law, within seven days by first class mail, to the party that filed the "fraudulent lien or claim." *Id.*

not properly certified and "abrogate state law." [3] On the same day, a Dallas County district court associate judge signed a document titled "Judicial Finding of Fact and Conclusion Regarding Instruments Purporting to Create a Lien or Claim" (the "2006 Findings and Conclusions"), which stated that the five notices of federal income tax liens filed against Drum's property:

(1) ARE NOT provided for by specific state or federal statutes or constitutional provisions;

(2) ARE NOT created by implied or express consent or agreement of the obligor, debtor, or owner of the real property, or an interest in the real property, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person;

(3) ARE NOT equitable, constructive, or other liens imposed by a court of competent jurisdiction created by or established under the constitution or laws of this state or the United States; and therefore

(4) ARE NOT lawfully asserted against real property or an interest in real property.

The 2006 Findings and Conclusions further state that it is "ORDERED AND ADJUDGED that the Motion to vacate alleged Liens ... is hereby FULLY GRANTED," and describe certain additional "evidentiary proof" that must be submitted before "[t]his order may be reversed." [4]

*This Lawsuit*

In December 2006, Drum filed a pro se "Original Civil Complaint for Money Damages" against Calhoun and her insurance carriers. In his "Complaint," Drum alleges, among other things, that the five notices of federal income tax liens filed against his homestead in the Dallas County real property records are "statutorily unauthorized, libelous, invalid, inchoate, non-judgment [and] non-abstracted," and that "Calhoun has violated the mandatory, official and ministerial terms and conditions of the people's office by knowingly and willingly allowing fraudulent liens against [Drum] into the Dallas County Records Index, with intentional, knowing and willing, criminal intent and with deliberate indifference and gross negligence to [Drum's] rights."

*The Motions to Declare Drum a Vexatious Litigant*

In their motions to declare Drum a vexatious litigant, Calhoun and American States argued that Drum met the requirements of section 11.054(2), which allows the trial court to determine that a pro se plaintiff is a vexatious litigant if the plaintiff attempts to the relitigate the validity of an adverse final determination in a prior litigation, or any of the claims or issues finally determined in a prior litigation. TEX. CIV. PRAC. & REM.CODE ANN. § 11.054(2). After a hearing, the trial court signed an order declaring Drum a vexatious litigant and requiring him to

---

**3.** The fifth notice of federal income tax liens was filed in the Dallas County property records against Drum's property after the federal district court dismissed Drum's claims in the 2004 lawsuit and before Drum filed his motion for judicial review.

**4.** Our appellate record demonstrates that in January 2007, after this lawsuit was filed, the associate judge signed an order vacating and

withdrawing the 2006 Findings and Conclusions. Drum filed a motion to quash the order that vacated and withdrew the 2006 Findings and Conclusions, on the ground that it was signed after the court's plenary power expired. The district court judge signed an order granting Drum's motion to quash the order that vacated and withdrew the 2006 Findings and Conclusions.

post $10,000 with the District Clerk as security within 30 days. The trial court's order also stated that if the security was not posted, the lawsuit "will be dismissed per Tex. Civ. Prac. And Rem.Code § 11.0567[sic]" and that Drum is prohibited "from filing any new lawsuits in propria persona in any court in the State of Texas" without first obtaining permission from the local administrative judge. Drum did not post the required security. After Drum's deadline to post the required security expired, defendants filed motions to dismiss Drum's claims pursuant to section 11.056 of the vexatious litigant statute. The trial court granted those motions, denied Drum's motion for new trial, and denied Drum's multiple requests that the trial court issue findings of fact and conclusions of law.

## Analysis

In his third issue, Drum argues that the trial court "misapplied the statute" because the trial court "knew there were not five cases" as required by section 11.054(1). More specifically, Drum contends that Calhoun only pleaded section 11.054(1) as a basis to declare him a vexatious litigant. He argues that the trial court's ruling must be reversed because it was based on section 11.054(2) and that basis for declaring Drum a vexatious litigant was not pleaded by Calhoun. We disagree.

■ In her motion, Calhoun cites generally to chapter 11 and refers to this lawsuit as Drum's "third lawsuit" against her based on the notices of federal tax liens. She also argues that this lawsuit is "the very same action/claim/controversy" as Drum's 2004 lawsuit against her, which was finally determined adversely to Drum. These are the criteria required by section 11.054(2), not section 11.054(1). *See* Tex. Civ. Prac. & Rem.Code Ann. § 11.054.

Moreover, American States's motion to declare Drum a vexatious litigant specifically cites section 11.054(2) and also alleges that this lawsuit is "the very same action/claim/controversy" as Drum's 2004 lawsuit, which was finally determined adverse to Drum. In summary, the motions to declare Drum a vexatious litigant were based on section 11.054(2), not section 11.054(1).

Next, Drum argues that he does not meet the statutory criteria to be determined a vexatious litigant because "Defendants had to show that Drum did not have a reasonable probability of prevailing and this was a hurdle they could not overcome in the face of" the "res judicata" 2006 Findings and Conclusions. Drum contends that the 2006 Findings and Conclusions "overshadow the dismissal by an inferior federal judge," "trumped the dubious federal Ruling," prove that Drum can and will prevail on his claims against Calhoun as a matter of law, and "barrs [sic] the court from ruling Drum vexatious." We disagree.

■ Because Drum's ex parte motion under section 51.903 for judicial review of the notices of federal income tax liens essentially sought to have the lien notices declared fraudulent and removed from the property records, the trial court in this case could have reasonably concluded that Drum's ex parte motion under section 51.903 was an *impermissible collateral attack* on the federal district court's final order. *See generally Browning v. Prostok*, 165 S.W.3d 336, 345–46 (Tex.2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands

as a bar against.").[5] And regardless of the legal effect, if any, of the ex parte 2006 Findings and Conclusions, they do not effect the federal district court's prior, final determination that Drum's claims against Calhoun relating to the lien notices are barred as a matter of federal law.[6] *See Drum,* 2005 WL 2217504, at \*1–5. As a result, the trial court could have also concluded that there is not a reasonable probability that Drum will prevail in this case because Drum is collaterally estopped from relitigating his claims against Calhoun relating to the lien notices. *See Stromberger v. Law Offices of Windle Turley, P.C.,* No. 05–06–00841–CV, 2007 WL 2994643, at \*4 (Tex.App.-Dallas Oct. 16, 2007, no pet.) (mem. op.) ("Collateral estoppel promotes judicial efficiency and precludes inconsistent judgments by preventing the relitigation of any ultimate fact issue previously litigated even though the subsequent suit brings a different cause of action.").

In his third issue, Drum also argues that the motions to declare him a vexatious litigant were an "abuse of the discovery process" and that the trial court should have heard and ruled on his multiple motions to compel discovery and for discovery sanctions, which were filed after Calhoun's motion to declare Drum a vexatious litigant. We disagree. Under the vexatious litigant statute, on the filing of a timely motion to declare the plaintiff a vexatious litigant, "the litigation is stayed" until the motion is decided. TEX. CIV. PRAC. & REM.CODE ANN. § 11.052(a). Consequently, based on the record presented here, the trial court was required to rule on the vexatious litigant motions before it could reach Drum's motions. *Id.* And when those motions were granted, the litigation remained stayed as a matter of statutory law unless and until Drum posted the required security. *Id.* § 11.052(a)(2). We overrule Drum's third issue.

### Drum's Constitutional Challenge to the Vexatious Litigant Statute

In his fourth issue, Drum argues that the vexatious litigant statute "violate[d] the Constitution's open courts doctrine in Drum's particular case" because the "[s]ecurity requirement of $10,000 is an insurmountable financial barrier that effectively barred Drum's access to court." Appellees argue that this issue was not preserved for appeal.

Constitutional complaints must be raised below or they are not preserved for appellate review. *See e.g., In re L.M.I.,* 119 S.W.3d 707, 711 (Tex.2003). And "[t]o preserve an error for appeal, a party's argument on appeal must comport

---

**5.** We also disagree with Drum's contention that the 2006 Findings and Conclusions issued pursuant to section 51.903 are comparable to a trial court's findings of fact and conclusions of law issued after a nonjury trial. Unlike findings and conclusions issued after a nonjury trial, findings and conclusions under section 51.903 may be issued after an ex parte review of documents and without prior notice. As a result, findings and conclusions issued pursuant to section 51.903 are not comparable to findings and conclusions issued after a nonjury trial. And in this case, we note that the 2006 Findings and Conclusions purport to "vacate alleged Liens" and describe certain additional "evidentiary proof" that must be submitted before "[t]his order may be reversed." As a result, they substantially deviate from the suggested form order provided under section 51.903 of the government code. *See* TEX. GOV'T CODE ANN. § 51.903(g).

**6.** Moreover, Calhoun was not a party to the proceeding that resulted in the 2006 Findings and Conclusions and our record does not reflect whether a copy of the 2006 Findings and Conclusions was sent to "the person who filed the fraudulent lien or claim ... within seven days" as required by section 51.903(e). *See* TEX. GOV'T CODE ANN. § 51.903(e).

with its argument in the trial court." *Knapp v. Wilson N. Jones Mem'l Hosp.,* 281 S.W.3d 163, 170–71 (Tex.App.-Dallas 2009, no pet.). Drum does not cite, and we have not found, any place in the appellate record where Drum raised an argument about the open courts doctrine to the trial court with sufficient specificity to apprise the trial court of the complaint, either before or after the trial court's ruling on the vexatious litigant motion. *See* Tex. R.App. P. 33.1(a). In Drum's reply brief, however, Drum contends that his argument that the trial court's "ruling that denies Drum a trial on the merits is a Textbook case on open courts doctrine violation" was "preserved for appeal in Drum's Motion for New Trial." But Drum's motion for new trial does not cite the open courts doctrine or make any other argument about the constitutionality of the trial court's ruling or the vexatious litigant statute.[7]

We conclude that Drum's fourth issue was not preserved for appellate review. *See Brown v. Tex. Bd. of Nurse Exam'rs,* 194 S.W.3d 721, 723 (Tex.App.-Dallas 2006, no pet.) (concluding "constitutional claim regarding the vexatious litigant statute was not preserved for appeal"); *McIntyre v. Wilson,* 50 S.W.3d 674, 688 (Tex.App.-Dallas 2001, pet. denied) (same). We overrule Drum's fourth issue.

### The Dismissal Orders

In his second and sixth issues, Drum challenges the trial court's orders dismissing his claims with prejudice. In his second issue, Drum argues that the trial court's dismissal orders as to each defendant are "a Breach of Contract." Drum's argument on this issue consists of two sentences:

> Whether Judge Slaughter's Arbitrary Ruling to Dismiss Drum's Cause of Action with Prejudice while fraudulent liens continue to cause damage to Drum is a Breach of Contract as Outlined in the Recorded instrument filed into the trial Court on July 5, 2007 and Recorded into the Dallas County Record file no. 20070242437[ ] as a private binding contract.

> Judge Slaughter affirmed her duty to uphold both the Constitution of Texas and the United States of America [ ], and yet maintained her ruling against Drum that clearly violated his right to property and redress [ ].

(Record citations omitted.) Drum does not provide any citations to applicable authority to support his argument. Consequently, we conclude that Drum's second issue is not sufficiently presented for appellate review. Tex.R.App. P. 38.1(i). We overrule his second issue.

In his sixth issue, Drum argues that the trial court "[a]rbitrarily and capriciously" "waiv[ed] local rules" because it held a hearing on defendants' motions to dismiss, and signed orders granting those motions, even though "Unitrin failed to have the local rule 2.07 conference for a Dismissal with Drum in the proper time." But the same local rule that Drum cites and relies upon, describing conference requirements, expressly states that the requirements "do not pertain to dispositive motions." Dallas (Tex.) Civ. Dist. Ct. Loc. R. 2.07(e).

---

**7.** And to the extent that Drum contends that .he preserved a complaint regarding the constitutionality of the vexatious litigant statute by filing an affidavit of indigence pursuant to rule of appellate procedure 20.1, we disagree. An affidavit filed pursuant to rule 20.1 does not preserve complaints about the trial court's rulings for appellate review. Rule 20.1 does not relate to error preservation; it allows an indigent party to proceed with an appeal without advance payment of filing fees and charges for preparing the appellate record. *See* Tex.R.App. P. 20.1.

Moreover, the record demonstrates that all three motions to dismiss were based on the mandatory dismissal required by section 11.056, and Calhoun's and American States's motions include certificates of conference. The record also demonstrates that Drum had notice of the hearing and attended the hearing. We overrule Drum's sixth issue.

## The Dallas County District Attorney's Office's Representation of Calhoun

In his first issue, Drum argues that "[t]he Dallas County District Attorney's office should be officially disqualified from representing Calhoun for criminally aiding, abetting and protecting Calhoun's criminal actions." Drum contends that because he filed "Verified criminal complaints" against former Assistant District Attorneys, the District Attorney's office "should have voluntarily stepped aside in this case" or the trial court should not have "allowed the DA's office to defend Calhoun." In response, Calhoun argues that Drum's complaint was not properly and timely raised in the trial court in order to preserve the complaint for appellate review.

■ Drum alleged in his "Complaint" that the criminal actions of two assistant district attorneys "barred the Dallas D.A.'s office from representing, defending, filing documents or pleading for Defendant Calhoun in this action due to a conflict of interest." Under Texas Rule of Appellate Procedure 33.1(a), in order to preserve this complaint for appellate review, Drum was required to bring his complaint to the trial court's attention in a timely manner and obtain a ruling on that complaint. TEX. R.APP. P. 33.1(a). In this case, the record shows that Drum did not bring his complaint about the alleged conflict of interest to the trial court's attention until the hearing on his "Objection to Dismissal and

Motion to Strike"—i.e., after the trial court signed the order dismissing his claims with prejudice. Consequently, we conclude that Drum did not bring his complaint to the trial court's attention within the time required by law in order to preserve the complaint for appellate review. *Id.* We overrule Drum's first issue.

## Drum's "Constitutional Disqualifications" of the Trial Judge

In his fifth issue, Drum argues that he is entitled to a hearing on his two "Constitutional Disqualifications" of the trial judge, which were denied by the presiding judge of the administrative judicial district without a hearing.

### Procedural Facts

When the trial court orally announced that it was declaring Drum to be a vexatious litigant, Drum immediately objected to the trial court's announcement on the basis that the trial judge was "disqualified." Drum apparently handed to the trial court a document titled "CONSTITUTIONAL DISQUALIFICATION OF JUDGE GENA SLAUGHTER AFFIDAVITOF [sic] PREJUDICE VERIFIED," which the trial court judge agreed to send to presiding judge of the administrative judicial district. Later the same day, the presiding judge of the administrative judicial district signed an order stating that (1) the "Motion to Recuse" does not provide allegations that warrant a hearing and (2) the motion is denied. Several months later, before the hearing on defendants' motions to dismiss Drum's lawsuit, Drum filed an "OBJECTION TO ASSIGNED JUDGE" and a "SECOND NOTICE OF CONSTITUTIONAL DISQUALIFICATION OF JUDGE GENA SLAUGHTER AFFIDAVITOF [sic] PREJUDICE VERIFIED." Before the hearing on defendants' motions to dismiss,

the presiding judge of the administrative judicial district signed another order stating that (1) the "Motion to Recuse" does not provide allegations that warrant a hearing and (2) the motion is denied.[8]

### Analysis

On appeal, Drum argues that because his two "verified Constitutional Disqualification[s]" "met all the requirements of Tex. Rule 18a(a)," the administrative court abused its discretion because it did not conduct "a hearing according to TRCP 18a(c)." Drum specifically argues on appeal, as he did below, that the trial judge was constitutionally disqualified from sitting in this case, as opposed to being subject to recusal.[9]

■ When a party files a motion contending that a judge is disqualified from sitting in a case, that motion must comply with the procedural requirements prescribed by Texas Rule of Civil Procedure 18a. *See* TEX.R. CIV. P. 18a. One of the procedural requirements of rule 18a is that a motion for disqualification "must state with particularity the grounds why the judge before whom the case is pending should not sit." TEX.R. CIV. P. 18a(a). The grounds for disqualification of a judge are found in the Texas Constitution and Texas Rule of Civil Procedure 18b(1). Under the Texas Constitution,

No judge shall sit in any case where in the judge may be interested,[10] or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.

TEX. CONST. art. V, § 11. And under rule 18(b)(1), judges are disqualified if:

(a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter; or

(b) they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy,

(c) either of the parties may be related to them by affinity or consanguinity within the third degree.

TEX.R. CIV. P. 18b(1).

Neither of Drum's two "Constitutional Disqualifications" allege any of these legally recognized grounds for constitutional disqualification of a trial judge. Instead, they principally allege that the trial judge is constitutionally disqualified from sitting in this case because she "has shown prejudice in favor of the Respondent, Defendant Cynthia Figueroa Calhoun in every aspect of the case." The United States Supreme

---

**8.** At the beginning of the hearing on the motions to dismiss, the trial court stated, "Mr. Drum has filed a second notice of disqualification today which I did fax to Judge Ovard. Judge Ovard has considered it and his staff has notified me that it has been denied and that [ ] an order will be on [its] way shortly. I am going to, therefore, continue with the hearing."

**9.** More specifically, Drum argues that "[a]ll of Judge Gena Slaughter's rulings are void ab initio due to the Constitutional Disqualifications that her and judge Ovard are trying to ignore by calling them recusals. Both of these Judges knew or should have known the difference between disqualification and recu-

sal." (Emphasis original; record citations omitted.)

**10.** The Amarillo Court of Appeals has explained,

[T]he type of interest required for disqualification must be of a pecuniary nature so that the judge would gain or lose by the judgment rendered in the case. The pecuniary interest must be capable of valuation. It must also be direct, real, and certain and be in the subject matter and in the result of the case in question.

*Williams v. Viswanathan*, 65 S.W.3d 685, 689 (Tex.App.-Amarillo 2001, no pet.).

Court has explained, however, that disqualification of a judge is constitutionally required only "in the most extreme of cases," and general allegations of bias and prejudice "are insufficient to establish any constitutional violation." *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 821, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Moreover, stating at least one legally recognized ground for disqualification is a mandatory procedural requirement of a disqualification motion filed pursuant to rule 18a. *See* Tex.R. Civ. P. 18a(a); *see also Rammah v. Abdeljaber,* 235 S.W.3d 269, 274 (Tex.App.-Dallas 2007, no pet.) ("Texas courts have consistently held that the procedural requirements of Rule 18a are mandatory."). Because Drum's "Constitutional Disqualifications" state only general allegations of bias and prejudice, and do not state at least one legally recognized ground for constitutional disqualification, we conclude that they do not meet the mandatory procedural requirements of rule 18a. As a result, we conclude that the presiding judge of the administrative judicial district did not abuse his discretion by denying Drum's "Constitutional Disqualifications" without holding a hearing. *Cf. Rammah,* 235 S.W.3d at 274 (presiding judge of administrative judicial district "did not abuse its discretion by denying a defective recusal motion without a hearing"); *In re Lincoln,* 114 S.W.3d 724, 726–27 (Tex.App.-

Austin 2003, no pet.) (per curiam) (presiding judge of administrative judicial district did not abuse his discretion by summarily denying defective recusal motion without first conducting hearing because basis underlying motion "is an insufficient ground for recusal as a matter of law"). We overrule Drum's fifth issue.

### Drum's Remaining Issues

In his seventh issue, Drum asks this Court "[w]hether Drum prevails as a matter of law since all of his pleadings are verified, while Defendants['] answers are not." Although Drum cites generally to rule of civil procedure 93, he does not make any argument about how or why that rule applied in this case. Moreover, Drum does not identify any particular pleadings he claims were required to be verified, nor does he describe why those pleadings were required to be verified.[11] We conclude that Drum's seventh issue is not sufficiently presented for appellate review. Tex. R.App. P. 38.1(i). Consequently, we overrule Drum's seventh issue.

In his eighth issue, Drum complains that the trial court held a hearing and made rulings on the district clerk's challenge to his affidavit of indigence, which Drum filed pursuant to rule of appellate procedure 20.1 before his notice of appeal. Drum does not cite any authority to demonstrate

---

11. In his reply brief, Drum cites the following paragraph from his motion for new trial to demonstrate that he preserved his complaint about unverified pleadings for appellate review:

> It would seem odd to a Jury Panel in Dallas County that Defense Attorneys would not submit verified pleadings if their ability to count to five would come into question. Is it possible that the extensive legal training these two culprits have, somehow has affected their ability to perform basic math? Just you look at your right hand and count the number of fingers and then look at TCPRC 11.054, then count the number of

rulings filed against Defendant Calhoun that were ruled adverse. (Maybe One) A Non–Suit is not an adverse ruling, is it? Even if we assumed, however, that this paragraph somehow preserved for appellate review a complaint that Calhoun's motion to declare Drum a vexatious litigant was not verified, Drum does not argue in his seventh issue on appeal that Calhoun's motion to declare Drum a vexatious litigant, or any other document filed below, was required to be verified. Moreover, we have found no authority suggesting that a motion to declare a plaintiff a vexatious litigant must be verified.

that it was reversible error for the trial court to conduct a hearing on the district clerk's challenge. *See* Tex.R.App. P. 38.1(i), 44.1(a). Moreover, the record demonstrates that Drum prevailed at this hearing and that the district clerk's challenge to his rule 20.1 affidavit was denied by the trial court as untimely.

▮ Drum also argues in his eighth issue that the trial court erred when it concluded that it did not have plenary power to hear Drum's motion for sanctions against Unitrin. We disagree. Drum filed a motion for sanctions against Unitrin, and sought a hearing on that motion, approximately three months after the trial court issued a written order denying his motion for new trial.[12] As a result, the trial court lacked plenary power to consider Drum's motion. *See* Tex.R. Civ. P. 329b(e) (trial court's plenary power expires 30 days after motion for new trial is overruled). We disagree with Drum's contention that the trial court's order denying the district clerk's challenge to his rule 20.1 affidavit of indigence extended the trial court's plenary power to grant a motion for sanctions. We overrule Drum's eighth issue.

In his ninth issue, Drum asks this Court whether the trial court had a statutory duty to seal the criminal complaints he claims to have filed against the trial court judge. The criminal complaints, however, are not included in our appellate record. *See Perry v. Kroger Stores, Store No. 119,* 741 S.W.2d 533, 534 (Tex.App.-Dallas 1987, no writ) ("The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, thus, the documents cannot be considered."). Moreover, Drum does not cite any authority to support his contention that the trial court was required to seal

the criminal complaints, nor does he cite the record to demonstrate that he asked the trial court to seal the criminal complaints and obtained a ruling on that request. Consequently, we conclude that Drum's ninth issue has not been preserved for appellate review and is not sufficiently presented for appellate review. Tex. R.App P. 33.1(a), 38.1(i). We overrule Drum's ninth issue.

## Conclusion

We affirm the trial court's orders declaring Drum a vexatious litigant and dismissing his claims with prejudice.

---

12. The trial court's order denying Drum's motion for new trial was issued on October 12, 2007. Drum's motion for sanctions was filed January 9, 2008.