**AFFIRM; and Opinion Filed November 12, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00740-CV**

**ROSALYNN R. COLEMAN, Appellant**

**V.**

**PATRICK CALVANO, OAK PARK EQUITIES, L.P., AND
DOMINION REALTY ADVISORS, Appellees**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. cc-11-06496-D**

**MEMORANDUM OPINION**

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

Appellant Rosalynn R. Coleman appeals pro se from the trial court's May 22, 2012 order

granting summary judgment in favor of appellees on Coleman's claims relating to her eviction

from Oak Park Apartments (Oak Park). We issue this memorandum opinion pursuant to Texas

Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled. We

affirm the trial court's judgment.

### BACKGROUND

The dispute between these parties dates back to 2007. Coleman rented an apartment at

Oak Park for 19 years. In July 2007 Oak Park installed a new roof on Coleman's building.

Coleman believed that during the installation of the new roof "audio devices" were installed

under the roofing material and persons unknown to her were spying on her and communicating

with her in an inappropriate manner. She felt she had been subjected to "electrical harassment," stalking, and violations of her privacy. She spoke to management at Oak Park several times and asked Oak Park to inspect the roof and remove the equipment. Oak Park inspected the roof, but did not find any equipment and refused to remove the entire roof to see whether surveillance equipment was installed underneath the roofing material.

Patrick Calvano, the managing agent of Oak Park Equities, L.P., which owns Oak Park, offered to let Coleman move to another unit in 2008. He also offered to terminate her lease early and return her security deposit so she could move to a different apartment complex. Coleman was not receptive to those options.

In November 2008 Coleman went to the manager's office to renew her lease. Although Coleman was initially told that Oak Park did not intend to renew her lease, her lease was renewed through June 2009. In January 2009 Coleman hired a lawyer and sued Oak Park Equities alleging that it had installed "equipment in [her] apartment in which Defendant can listen to [her] activity and have inappropriate conversations with [her] against her will." She alleged that Oak Park Equities was intercepting her communications, listening to her activity and conversations, and making derogatory comments to her about her activity and conversations. Six months later the lawsuit was dismissed for want of prosecution. Coleman, as a pro se, filed a motion to reinstate the lawsuit, but the court denied the motion.

At some point in 2009 Oak Park advised Coleman that it would not renew her lease and asked her to vacate by the end of her lease term. Coleman did not vacate her apartment when the lease expired. She also stopped paying rent. In August 2009 Oak Park filed a complaint for eviction on the ground that Coleman was holding over. Coleman, representing herself, filed an answer and alleged as affirmative defenses, among other claims, that Oak Park was retaliating against her for reporting the offenses of harassment and invasion of privacy and for holding over.

–2–

The record does not state what happened in the justice court, but the matter was appealed to the county court. The county court found that Oak Park retaliated against Coleman by filing a complaint to have her evicted after she failed to leave at the end of her lease term. But the county court also found that Coleman had failed to pay rent for July and August 2009 and that Oak Park "is not precluded from taking action for eviction against [Coleman] for failure to pay rent for July and August, 2009."

Oak Park filed a second complaint for eviction in September 2009, this time alleging nonpayment of rent as the ground for eviction. Coleman answered and alleged retaliation, harassment, invasion of privacy, slander, and that "Calvano has set in motion to sabotage [her] residency and further sabotage and/or damage her credit history by wrongfully forcing this illegal eviction." The justice court found in favor of Oak Park, and Coleman appealed to the county court. She did not appear when the case was called for trial. The county court rendered judgment in favor of Oak Park for possession, unpaid rent, costs, and attorney's fees. Oak Park evicted Coleman in October 2009.

In December 2009, again representing herself, Coleman filed a second lawsuit against Oak Park Equities. She alleged retaliation, conspiracy, slander, intentional infliction of emotional distress, and that Oak Park Equities sabotaged her tenancy, violated her tenant's rights, conspired to have her evicted, and wrongfully targeted her for eviction because she is African American. She sought $5 million in damages. In February 2010 the lawsuit was dismissed for want of prosecution.

In October 2011 Coleman filed this lawsuit. She again sued Oak Park Equities, but also added Calvano and Dominion Realty Advisors as defendants. Dominion manages Oak Park, and Calvano, in addition to his position as managing agent of Oak Park Equities, is Dominion's president. Coleman alleged retaliation, violation of tenant's rights, conspiracy, intentional

–3–

infliction of emotional distress, breach of fiduciary and confidential relationship, and vicarious liability. Her causes of action were based on the same underlying facts as her previous lawsuits and her answers in the eviction cases. She sought damages in the amount of $36 million and a written apology with a copy of the apology to all those with whom appellees communicated about her.

Appellees jointly filed a hybrid no-evidence and traditional motion for summary judgment. The no-evidence portion of the motion stated the specific elements of Coleman's claims for retaliation, breach of fiduciary and confidential relationship, intentional infliction of emotional distress, and conspiracy for which they contended Coleman had no evidence. In the traditional portion of the motion, appellees argued that all of Coleman's claims were barred by res judicata.

Coleman filed several responses to the motion. Her last-filed amended response generally stated the background of the case, reiterated her allegations against appellees, and complained about certain statements in appellees' motion. Her specific response to the motion for summary judgment stated:

> The Plaintiff respectfully requests that the Defendant's claims to dispose of all of the Plaintiff's issues be denied; and to dismiss the Defendants' No-Evidence and Traditional Summary Motion. None of what the Defendant has claimed to not have merit is true. All causes presented in the Plaintiff's Original Petition and First Amended Petition were submitted to the court within the statutes of limitations. All evidence to be presented in court was and is recorded in the Plaintiff's Original Petition, and First Amended Petition; please see evidence attached to this response. All claims brought forth by the Plaintiff has merit, thusly, is true.

Coleman attached 12 exhibits containing almost 40 pages to her response. In a reply, appellees objected to several of the documents Coleman attached as summary judgment evidence and also argued that Coleman's response did not satisfy the requirement for specificity. They

argued that Coleman only generally referred to her evidence and "therefore presented absolutely no proper summary judgment evidence in response" to the summary judgment motion.

The trial court sustained appellees' objection to Coleman's "failure to specifically cite or reference her evidence in the 1st Amended Response" and also sustained appellees' objections to several documents attached to Coleman's response. The trial court granted appellees' motion for summary judgment "in its entirety" and ordered that Coleman take nothing in her case against appellees.

### STANDARD OF REVIEW

We review a trial court's decision to grant or deny a motion for summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). After an adequate time for discovery, the party without the burden of proof may move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim. TEX. R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id*. The burden then shifts to the nonmovant to raise a genuine issue of material fact as to each essential element identified in the motion. *Id*. & cmt (1997); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

To defeat summary judgment, an appellant must specifically address each challenged element and produce summary judgment evidence raising a genuine issue of material fact on those challenged elements. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310; *Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied) (party submitting summary judgment evidence must specifically identify supporting proof on file to trial court) (quoting *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App.—San Antonio 2006, no pet.)). And when multiple grounds are raised in the summary judgment motion and the trial court does not specify the ground or grounds relied upon for its ruling, an appellant must challenge each

possible ground on which summary judgment could have been granted. *Scheler v. Smith*, No. 05-08-01439-CV, 2010 WL 2978333, at *1 (Tex. App.—Dallas July 30, 2010, no pet.) (mem. op.); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. *Jarvis*, 298 S.W.3d at 313.

## ISSUES ON APPEAL

Coleman asserts two broad issues on appeal. Under "Issue I – Judge[']s Errors," she argues that (1) appellees did not respond to her first amended petition and, as a result, she "wins her case by a No-Answer Default"; (2) the trial court "intentionally set back" the original hearing date "by six months to manipulate a No-Evidence ruling," which she considers "[a]n obvious deceitful rescheduling attempt to make [her] derail and lose her case"; (3) the trial court "intentionally ignored the continuing and repeated torts law"; (4) the trial court "intentionally did not acknowledge [her] Pauper's status"; (5) there are court documents missing from the record; and (6) the trial court made a "number of errors" below, with general citations to the rules of appellate procedure, commentaries, rules of court, and rules of evidence.

Under "Issue II – Causes of Action," Coleman describes the causes of action she filed against appellees, the evidence upon which she bases those claims, and repeatedly argues that the trial court should have granted her a default judgment on her claims because appellees did not file an answer to her first amended petition.

## DISCUSSION

We first point out that Coleman was pro se in the trial court and is pro se on appeal. We hold pro se litigants to the same standards as licensed attorneys and require them to comply with our rules of evidence and procedure. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315

S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.). To do otherwise would give pro se litigants an unfair advantage over litigants who are represented by counsel. *See Drum v. Calhoun*, 299 S.W.3d 360, 364 (Tex. App.—Dallas 2009, pet. denied).

### Issue I

In her first issue, Coleman contends that the trial court should have granted her a default judgment because appellees did not answer her amended petition. We disagree. Coleman filed her original petition on September 19, 2011, and filed her amended original petition on October 5, 2011, before appellees' original answers were due. *See* TEX. R. CIV. P. 99 (calculating date answer is due). Oak Park Equities and Calvano filed a joint original answer on October 17, 2011, and Dominion filed an original answer on November 22, 2011. Coleman does not cite us to the record where she moved for default judgment against appellees, and the clerk's record does not contain a motion for default judgment. *See* TEX. R. CIV. P. 238, 239. Additionally, there is no reporter's record showing that Coleman moved for default judgment or presented evidence to support her damages. *See* TEX. R. CIV. P. 243 (stating court must hear evidence of damages before rendering default judgment); *Harrison v. Dallas Court Reporting Coll., Inc.*, 589 S.W.2d 813, 816 (Tex. Civ. App.—Dallas 1979, no writ) (stating "plaintiff was required to prove his damages and absent such proof, the default judgment cannot stand"). Consequently, we conclude that the trial court did not err by not granting Coleman a default judgment against appellees.

Coleman also contends in issue one that the trial court made several alleged errors such as intentionally resetting her court date, ignoring "the continuing and repeated torts law," not acknowledging her indigent status, and making objections to her requests and motions. Coleman does not cite authority to support her position that these claimed matters are even appealable. Additionally, to preserve most issues for appellate review, a party must bring the issue to the trial court's attention by a timely request, objection, or motion. *See* TEX. R. APP. P. 33.1. This is so

that the trial court has an opportunity to rule on the issue or correct any error in its ruling. *In re R.J.P.*, 391 S.W.3d 677, 678 (Tex. App.—Dallas 2013, no pet.).

We have reviewed the record on appeal and conclude that Coleman did not raise in the trial court any of the trial court's alleged errors about which she complains in issue one and, consequently, the trial court was not given an opportunity to correct these alleged errors. *See id.* Because Coleman did not raise these matters below and, regardless of whether they are appealable, we conclude that they are not properly before us for review. *See* TEX. R. CIV. P. 33.1; *In re R.J.P.*, 391 S.W.3d at 678–79. We resolve issue one against appellant.

## Issue II

Under "Issue II – Causes of Action," Coleman describes each of her claims in detail and again argues that the trial court should not have considered appellees' motion for summary judgment because she should have been awarded a default judgment. We previously addressed the default judgment issue, however, and resolved it against Coleman.

With respect to the no-evidence portion of appellees' motion for summary judgment, Coleman's response below did not provide argument or cite to evidence showing that there is a genuine issue of material fact on any of the challenged elements of her claims. *See* TEX. R. APP. P. 38.1(h); *see also Nguyen*, 404 S.W.3d at 776 (nonmovant must refer specifically to evidence it claims raises a genuine issue of material fact on the challenged elements of its claims); *Scheler*, 2010 WL 2978333, at *1–2; *Jarvis*, 298 S.W.3d at 313–14. And her brief on appeal does not challenge the trial court's summary judgment on any of the no-evidence or traditional grounds raised in the motion. Consequently, because Coleman does not challenge any of the grounds upon which summary judgment could have been granted, we must affirm the summary judgment. *See Scheler*, 2010 WL 2978333, at *2; *Jarvis*, 298 S.W.3d at 313–14.

**CONCLUSION**

We affirm the trial court's summary judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

120740F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROSALYNN R. COLEMAN, Appellant

No. 05-12-00740-CV      V.

PATRICK CALVANO, OAK PARK
EQUITIES, L.P., and DOMINION
REALTY ADVISORS, Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. cc-11-06496-D.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Evans participating.

       In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

       It is **ORDERED** that each party shall bear its own costs of appeal.

Judgment entered this 12th day of November, 2013.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE